# HARRY DWORSKY AND OTHERS, INDIVIDUALLY AND AS COPARTNERS *d.b.a.* DWORSKY INSURANCE AGENCY, v. VERMES CREDIT JEWELRY, INC.[1]

February 25, 1955.

No. 36,342.

[1]Reported in 69 N. W. (2d) 118.

*Mahoney & Mahoney,* for appellants.
*Leonard, Street & Deinard,* for respondent.

CHRISTIANSON, JUSTICE.

The Dworsky Insurance Agency is a licensed insurance agency in Minneapolis representing various insurance companies, including the Fireman's Fund Insurance Company. Sometime during the spring of 1948, Harry H. Dworsky, representing the Dworsky Agency, called upon defendant, Vermes Credit Jewelry, Inc., a Minnesota corporation engaged in the retail jewelry business in Minneapolis, hereinafter called Vermes, to solicit the purchase of a "jewelers' block policy." The policy was an all-risk, comprehensive policy covering the operation of a retail jewelry business written by the Fireman's Fund Insurance Company, a California corporation licensed to do business in this state, hereinafter called the insurer. Negotiations were conducted intermittently and were culminated on October 25, 1948, when Harry Vermes, an officer of defendant, signed a proposal for

insurance. The proposal was prepared and Vermes's signature was witnessed by George C. Maxwell, the insurer's Minnesota state agent, who accompanied Dworsky to the Vermes store on the day the proposal was signed. On December 10, 1948, Vermes paid $100 down on the $754 premium. The Dworsky Agency signed the completed policy on behalf of the insurer and delivered it to the Vermes store. However, the details of the policy negotiations were handled by Maxwell subsequent to the signing of the proposal, and it was Maxwell who forwarded the proposal and other information to the insurer's regional office in Chicago where the policy was written and the proposal attached thereto and made a part thereof. Thereafter the policy was forwarded to Maxwell who, in turn, sent it to the Dworsky Agency for delivery to Vermes.

The policy protected Vermes against enumerated risks up to the amount of $20,000 and was to remain in force for one year from November 23, 1948. Among the warranties contained in the proposal which became a part of the policy was a provision that while the premises were closed, Vermes would keep 60 percent of its jewelry by value in a safe or vault.

On March 16, 1949, the Vermes store was destroyed by a fire, and the total damage exceeded the face amount of the policy. Proofs of loss were submitted to the insurer, who refused to pay the claim on the ground that Vermes had not complied with the warranty that it would keep 60 percent of its property by value in vaults or safes. Vermes thereupon sued the insurer in the United States district court for the district of Minnesota to recover the full amount of the policy. The district court held as a matter of law that the warranty relied upon by the insurer as a defense was invalid under the Minnesota standard fire policy law (M. S. A. 65.01) and gave judgment for Vermes.[2] The insurer took an appeal to the United States Court of Appeals for the eighth circuit, which affirmed the judgment of the district court.[3]

[2]Vermes Credit Jewelry, Inc. v. Fireman's Fund Ins. Co. (D. Minn.) 92 F. Supp. 905.

[3]Fireman's Fund Ins. Co. v. Vermes Credit Jewelry, Inc. (8 Cir.) 185 F. (2d) 142.

Following the federal court litigation, the Dworsky Agency brought this action against Vermes to recover $654, the unpaid balance of the insurance premium. Vermes denied its liability for the balance of the premium and counterclaimed for the $100 it had paid on account and for $4,000 it expended in retaining attorneys to prosecute its claim against the insurer in the federal courts. The case was tried to the court and resulted in a judgment denying the Dworsky Agency's claim for the balance of the premium and giving defendant Vermes full recovery on both of its counterclaims. The Dworsky Agency appeals from the judgment so entered.

The Dworsky Agency's claim for the unpaid balance of the premium and defendant Vermes's counterclaim for the $100 it paid on account necessarily raise the same question since the parties agree that there is no problem of prorating the premium to the various coverages afforded by the "block" policy.

■ The principal dispute concerning liability for the premium centers around Vermes's contention that, under the insurance laws of Minnesota, the policy delivered to it contained an illegal warranty. This we take to be established as a result of the federal court litigation. But defendant seeks to extend the effect of this illegal provision to invalidate the entire policy. We find no support for this position in the statutes. The opening clause of § 65.01, which prescribes the terms that may be used in the standard fire policy, provides as follows:

"No fire company shall issue on property in this state any policy other than the standard form herein set forth, the blanks for which may be filled in print or in writing, *and no condition, stipulation or term, other than those therein provided for,* whether as to jurisdiction, limitation, magistrate, certificate or otherwise, *shall be valid if inserted in any such policy,* except as follows:" (Italics supplied.)

We are unable to discover in these words an intent to invalidate entire contracts of insurance. The plain intent of the legislature was to nullify offending provisions favoring the insurer and yet retain the remainder of the contract for the benefit of the insured.

This same intent appears in related provisions in the same chapter dealing with fire insurance:

§ 65.04. "* * * but every stipulation of the policy in favor of the insured shall, nevertheless, be binding upon the company issuing the same."

§ 65.09. "Notwithstanding any penalty prescribed for the making, issuing, or delivery of any policy in violation of any provision of law, every such policy shall be binding upon the company issuing the same."

We therefore find no language in the statute upon which the entire policy can be invalidated by the illegal warranty relating to storage of jewelry while the premises were closed.

We likewise find nothing in the cases cited by defendant which leads to this conclusion. Simmer v. Simmer, 195 Minn. 1, 261 N. W. 481, involved a contract which contained illegal promises on both sides that pervaded the entire contract and rendered it unenforceable. This court in that case said (195 Minn. 6, 261 N. W. 483):

"* * * in this case we find the strands of agreement so inextricably woven together, the lawful with the unlawful, that the result is a seamless fabric which it is beyond our power to divide so as to sever the lawful from the inhibition attending what is unlawful."

In this regard it should be pointed out that there is no suggestion here that the warranty with which we are concerned was entirely illegal with respect to all of the risks covered by the "block" policy. The federal court litigation determined only that the warranty was illegal insofar as the insurer attempted to rely on it as a defense to the claim for fire damage. The lawful and the unlawful are not so "inextricably woven" into the policy that the contract cannot be enforced if the unlawful is stricken.

Neither do we find merit in the contention that defendant was relieved from liability for the premium by the Dworsky Agency's breach of an implied warranty to deliver a policy complying with the insurance laws of this state. Since the existence of an implied warranty is a question of law and does not arise out of a contract

or the intention of the parties (Bekkevold v. Potts, 173 Minn. 87, 89, 216 N. W. 790, 791, 59 A. L. R. 1164), the trial court's "finding of fact" to the effect that the Dworsky Agency warranted that it would deliver a policy complying with the laws of this state is a mere conclusion of law and is not binding upon this court. See, Graphic Arts Educational Foundation, Inc. v. State, 240 Minn. 143, 146, 59 N. W. (2d) 841, 844. The manner in which the negotiations were conducted leading up to the issuance of the policy, with an agent in the direct employ of the insurer taking the initiative in the formation of the details of the policy, left the Dworsky Agency in the position of an innocent bystander with respect to the unauthorized warranty, notwithstanding its activity in signing and delivering the completed policy. In view of these facts, we are unable to see how the Dworsky Agency can be held to have impliedly warranted the perfection of every detail of the policy. At most, the Dworsky Agency impliedly warranted that, if all lawful provisions were complied with, the policy would be enforceable against the insurer. In view of Vermes's success in the litigation in the federal courts, there was no breach of this warranty.

We likewise find no support in the record for the finding that a confidential relationship existed between Vermes and the Dworsky Agency. If Vermes had dealt solely through the Dworsky Agency, a confidential relationship might have been established which would impose a duty on the Dworsky Agency to examine the policy and the proposal made a part thereof and determine the legality of the offending warranty before delivering it to Vermes. However, the evidence clearly indicates that the Dworsky Agency had no part in the negotiations dealing with the contents and conditions of the policy and that the insurer's special agent openly assumed the initiative in this phase of the transaction.

■ Vermes also contends that even if its liability for the premium is established, this liability can be enforced only by the insurer and the Dworsky Agency cannot recover in this action without establishing that it has advanced the entire amount of the premium to the insurer, thereby acquiring the insurer's right to collect the balance, or at least that it had become liable to the insurer therefor. How-

ever, since it is apparent from the allegations of Vermes's answer and the admissions in the Dworsky Agency's reply thereto as well as from the trial court's findings that this question was not raised at the trial and Vermes in effect conceded that, if its liability for the premium was established, its indebtedness to the Dworsky Agency for the balance thereof followed as a matter of law, we find no merit in this contention. Cf. Sclawr v. City of St. Paul, 132 Minn. 238, 156 N. W. 283.

In support of the trial court's favorable action on its counter-claim for attorney's fees in the federal court litigation, defendant points out that the policy which it received did not comply with the Minnesota standard fire policy as defined in § 65.01. Section 65.04 provides that:

"Every company and every agent who shall wilfully make, issue, or deliver a policy in violation of section 65.01 shall be guilty of a gross misdemeanor; but every stipulation of the policy in favor of the insured shall, nevertheless, be binding upon the company issuing the same."

Section 60.28 provides that:

"It shall be unlawful for any person, firm, or corporation to solicit or make, or aid in soliciting or making, any contract of insurance not authorized by the laws of this state."

Though we have ruled against the contention that a warranty which is violative of § 65.01 negates an entire policy containing insurance against risks other than fire to which that warranty could apply, it seems clear from the trial court's findings that it was of the opinion that the presence of the warranty still constituted a violation on the part of the Dworsky Agency of §§ 65.04 and 60.28. However, we find no support in the record for the finding of the trial court to the effect that the Dworsky Agency's violation of § 65.01 was wilful. The illegal warranty was contained in the proposal leading to the issuance of the policy, and the proposal was prepared by Maxwell, an agent in the direct employ of the insurer. Though the proposal was thereafter attached to and made a part of the policy,

there is no evidence whatsoever to indicate that the Dworsky Agency was aware of the illegality of the warranty insofar as it applied to the fire risk at the time it signed the completed policy and delivered it to Vermes. We therefore find no basis for the court's finding that the Dworsky Agency wilfully issued a policy violating § 65.01 and thereby violated § 65.04.

However, defendant also urges upon us the conclusion that the Dworsky Agency violated § 60.28, which does not require that the solicitation or issuance of an unauthorized policy must be a wilful violation of the insurance laws of this state. It is contended that this violation not only provides a statutory ground for recovery of the $100 it paid the Dworsky Agency on account and the expenses incurred in retaining attorneys to conduct the litigation in the federal courts but also establishes a defense to the Dworsky Agency's claim for the unpaid balance of the premium. We do not agree with this sweeping interpretation of § 60.28. While the violation of § 60.28 may provide a basis for the revocation of the agent's license[4] and where the violation is wilful may subject him and the company issuing the policy to the penalties prescribed by § 72.10, we can find therein no intention to create a claim in favor of the policyholder. Section 60.28 applies to all types of insurance issued in this state. We cannot ascribe to the legislature an intent thereby to create civil liability independent of any showing of wilfulness or negligence. Whether the same conclusion is applicable to § 65.04 we need not decide, since no violation of that provision has been shown by the evidence. It is true, as defendant points out, that the statutes governing the issuance of fire policies were enacted for the benefit of the insured, but the remedy given the policyholder where the violation is neither wilful nor negligent is the power to ignore with impunity any provisions not meeting the requirements of the statute. This is the remedy which Vermes successfully exercised in this case.

■ Finally, there remains for consideration whether, apart from the statutes relied upon, Vermes has a right to recover the expenses incurred in the federal court litigation. As a general rule, attorney's

[4]See, §§ 60.69 and 60.68.

fees are not recoverable as an item of damages unless there is a specific contract permitting such recovery or such fees are authorized by statute. Smith v. Chaffee, 181 Minn. 322, 232 N. W. 515; Stickney v. Goward, 161 Minn. 457, 201 N. W. 630, 39 A. L. R. 1216; Ritter v. Ritter, 381 Ill. 549, 46 N. E. (2d) 41. But where the wrongful act of the defendant thrusts the plaintiff into litigation with a third person, the plaintiff may recover from the defendant the expenses incurred in conducting the litigation against the third party, including attorneys' fees. Tarnowski v. Resop, 236 Minn. 33, 51 N. W. (2d) 801, 37 Minn. L. Rev. 401; Bergquist v. Kreidler, 158 Minn. 127, 196 N. W. 964; Turner v. Zip Motors, Inc. (Iowa) 65 N. W. (2d) 427; Indiana Nat. L. Ins. Co. v. Butler, 186 Ky. 81, 215 S. W. 949. In final analysis the question presented is whether the activities of the Dworsky Agency directed toward the sale of the policy constituted a wrongful act which would justify the application of this rule.

We are of the opinion that the Dworsky Agency was not guilty of conduct rendering it liable for the expenses incurred in the federal court litigation between Vermes and the insurer. The evidence is undisputed that the terms and conditions of the policy were prepared by Maxwell, an agent in the direct employ of the insurer, and no claim of negligence on the part of the Dworsky Agency has been asserted or alleged. The impression gained from the record is unmistakable that the Dworsky Agency took no substantial part in the details of the transaction after it had brought Vermes and Maxwell together. After Maxwell and Vermes had negotiated the final terms of the policy, the Dworsky Agency's activities in signing, delivering, and accepting down payment on the policy can most accurately be characterized as merely the performance of formal acts. In addition, it was the insurer's decision to resist payment of Vermes's claim on the basis of the illegal warranty, and there is nothing in the record to suggest the inference that the Dworsky Agency participated in or could have reasonably foreseen that decision.

We accordingly hold that there is no merit in either of defendant's counterclaims and that the Dworsky Agency should have judgment for the balance of the premium.

Reversed.

[1]Reported in 69 N. W. (2d) 108.