Glenn D. MATTSON and Dorothy Mattson, individually, and as parents and natural guardians of Annette L. Mattson, Karen L. Mattson, and Daniel J. Mattson, Respondents (C8–85–2176) Appellants (CX–85–2177),

v.

UNDERWRITERS AT LLOYDS OF LONDON and John Victor Scott, Appellants (C8–85–2176) Respondents (CX–85–2177).

Nos. C8–85–2176, CX–85–2177.

Court of Appeals of Minnesota.

April 22, 1986.

Review Denied June 19, 1986.

Richard G. Hunegs, Peter W. Riley, William Kvas, DeParcq, Perl, Hunegs, Rudquist & Koenig, P.A., Minneapolis, for Mattson et al.

David S. Doty, Keith J. Halleland, Popham, Haik, Schnobrich, Kaufman & Doty, Ltd., Minneapolis, for Underwriters at Lloyds of London and John Victor Scott.

Heard, considered and decided by NIERENGARTEN, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

The Underwriters at Lloyds of London and John Victor Scott (Lloyds) appeal from an amended judgment entered on October 8, 1985. Lloyds disputes the validity of an assignment of a bad faith claim against it by Car-Del Corporation, Inc. (Car-Del) to Glenn and Dorothy Mattson. Mattsons appeal from an order filed June 3, 1985, denying their motion for attorney fees, from an order dated September 27, 1985, amending the judgment to reduce interest, and from the amended judgment of October 8, 1985. The appeals were consolidated. We affirm in part and reverse in part.

## FACTS

This lawsuit originated with a car accident on April 1, 1973. Glenn D. Mattson was seriously injured when the car he was driving was struck by Glen V. Johnson's car. Johnson was driving while intoxicated. He had been drinking for several hours at the Meadowmoor Supper Club.

Meadowmoor was owned and operated by the Car-Del Corporation at the time of the accident. Lloyds carried the dram shop insurance for Car-Del.

Mattson brought suit against Car-Del and Johnson on January 1, 1976. He sought damages on behalf of himself, his wife, and their minor children. In the lawsuit Mattson claimed that Johnson was negligent. Mattson also claimed that the employees at the Meadowmoor Supper Club had served liquor to Johnson while he was obviously intoxicated in violation of Minnesota's Dram Shop laws.

Car-Del voluntarily dissolved by filing a certificate of voluntary dissolution on July 29, 1976. Car-Del had previously filed a notice of claim against Lloyds.

Johnson's insurer paid Mattson his $10,000 policy limit soon after the lawsuit was commenced.

On several occasions Mattsons attempted to settle their claim against Car-Del for what Lloyds claimed were the policy limits of $100,000. Lloyds refused to accept and offered $40,000 instead. No settlement was reached.

Lloyds defended Car-Del at trial. A jury found that Johnson was negligent, that Meadowmoor Supper Club violated the dram shop laws and that Mattson was not negligent. A judgment of $256,562.65 was entered against Car-Del on July 6, 1977.

Lloyds paid Mattsons $100,000 but denied responsibility for the excess judgment.

Over three years after the corporation was dissolved, on September 15, 1979, Car-Del's former trustee, William P. Germann, attempted to assign to Mattsons a claim against Lloyds for its bad faith refusal to settle within the policy limits. Germann purported to act on behalf of the corporation. He assigned the claim in exchange for Mattsons' agreement to refrain from enforcing their excess judgment against Car-Del.

Mattsons sued Lloyds under the purported assignment for the difference between the Anoka County judgment and the amount paid by Lloyds. Lloyds argued the assignment was invalid because it was not made until after the three year statutory period for winding up corporate affairs had expired.

Both parties moved for summary judgment. The trial court granted Mattson's motion, holding that expiration of the winding up period under Minn. Stat. § 300.59 did not affect the assignment because it was an "asset omitted from the winding up," accordingly the claim was vested in the trustee for distribution under Minn. Stat. § 301.56.

A trial was held in January of 1985 after which a jury determined that Lloyds had acted in bad faith. Lloyds argued in post-trial motions that (1) Car-Del could not assign an asset it did not have at the time of dissolution, and that (2) even if the corporation had the power to assign the claim, the assignment was not made within the three year period. The trial court entered judgment against Lloyds on February 13, 1985 and subsequently denied Mattson's motion for attorney fees.

Lloyds appeals the trial court's order that the 1979 assignment was timely under Minn. Stat. § 300.59. Mattsons also appeal from the trial court's denial of its attorney fees.

1. Lloyds will be referred to as appellant, al-

## ISSUES

1. Was Car-Del's purported assignment of its bad faith claim against Lloyds barred by the three year limitation period of Minn. Stat. § 300.59?

2. Did the trial court abuse its discretion in denying respondent's motion for attorney fees?

## ANALYSIS

### I.

Appellant[1] argues that Mattsons' claims against Lloyds are time barred under the Minn. Stat. § 300.59, which applies to this action. The statute provides:

Except for a corporation subject to the Minnesota Nonprofit Corporation Act, a corporation whose existence terminates by limitation, forfeiture, or otherwise continues for three years after the termination date for the sole purpose of prosecuting and defending actions, closing its affairs, disposing of its property, and dividing its capital.

Minn. Stat. § 300.59 (1982).

Appellant argues that under the express terms of the statute, the existence of Car-Del was terminated for all purposes, including prosecuting this lawsuit, three years from the date of dissolution. Appellant maintains that since Car-Del had nothing to assign after it was incapable of suing, the assignment to Mattsons was invalid.

Respondents argue that the trial court properly relied on Minn. Stat. § 301.56 (1980) (repealed 1981). It provides that assets omitted from the winding up are vested in a trustee for distribution:

The title to any assets omitted from the winding up shall vest in the trustee or trustees, or receiver or receivers, for the benefit of the persons entitled thereto and shall be administered and distributed accordingly.

*Id.*

Because no time limit is set in section 301.56 regarding when the trustee's duties are completed, respondent argues, Ger-

though both parties appealed.

mann's assignment was valid. Respondents are assuming that a corporation can acquire a cause of action after it has dissolved, and further, that a corporation can assign such claim beyond the three year statutory corporate survival period.

At common law in Minnesota the 1977 judgment against Car-Del would have been a nullity since the effect of dissolution was that the corporation wholly ceased to exist for any purpose. *E.g., Bowe v. Minnesota Milk Co.,* 44 Minn. 460, 463, 47 N.W. 151, 152 (1890). To obviate this harsh rule the legislature enacted the predecessor to section 300.59 which extended the life of a dissolved corporation for a specific term. *Id.* Under the statute the corporation ceased for purposes of doing business. *Id.* It continued for the limited purposes of settling debts and prosecuting or defending lawsuits. *Id.; see generally* Note, *Minnesota Business Corporations Act: Greater Freedom for Corporations,* 66 Minn.L.Rev. 1033, 1046–48 (1982).

A few Minnesota cases refer to the statutory three year period which applies here. *Henderson v. Northwestern Heating Engineers,* 274 Minn. 396, 144 N.W.2d .46 (1966); *Kopio's v. Bridgeman Creameries,* 248 Minn. 348, 79 N.W.2d 921 (1956). These opinions are based on the assumption that three years is the absolute limit within which a dissolved corporation can sue or be sued. In *Kopio's* the supreme court stated that the power of a corporation to sue can be extended only by specific statutory authority:

> A corporation, as a creature of statute, has such rights and responsibilities, such powers and limitations, as are accorded it by the legislature. Minnesota corporations, including the defendant herein, are specifically granted the power to sue and be sued. *However, in the absence of statutory extension, all such powers of a corporation abate at the end of the corporate existence, including the power to sue and be sued.*

*Kopio's,* 248 Minn. at 350, 79 N.W.2d at 923 (footnotes omitted) (emphasis supplied).

In light of the specific three year limit of § 300.59 it is apparent that section 301.56 is not statutory authority providing Car-Del the power to sue *beyond* the three year survival period. The three year time limit must apply to a trustee's duties in this situation. In *Henderson,* the supreme court reasoned that although the statute sets no time limit on the trustee's duties, the trustee remains a trustee for the three year period:

> Since § 301.56 provides that "[t]he title to any assets omitted from the winding up shall vest in the trustee," it would seem clear that the trustee's duties do not necessarily terminate with his filing of the certificate of dissolution. Since one of the duties of the trustee enumerated in § 301.52 is to defend the corporation against claims, it must follow that his capacity as trustee will continue so long as the corporation can be legally subjected to claims. Since under § 300.-59 the corporation's existence continues for 3 years after the filing of the certificate for the purpose of defending actions, it must of necessity follow that the trustee will remain a trustee for the 3-year period.

*Henderson,* 274 Minn. at 400, 144 N.W.2d at 48.

That a dissolved corporation's capacity to sue or defend is limited to suits brought within the statutory survival period is further evidenced by the Minnesota Supreme Court's discussion in *Gassert v. Commercial Mechanisms,* 277 N.W.2d 392 (Minn. 1979). *Gassert* concerned the application of a two year Missouri survival statute [2] where the corporation argued it was not capable of being sued after it had dissolved. *Id.* The statute did not address whether a corporation can sue or defend on a cause of action arising subsequent to dissolution but brought within the statutory period. *Id.* at 394.

---

**2.** The law of the state of incorporation governs the rights and responsibilities of a dissolved corporation. *Gassert v. Commercial Mechanisms,* 277 N.W.2d 392, 393 (Minn.1979).

The supreme court concluded that suits commenced *within* the statutory period are not time barred. *Id.* The court reasoned:

> This position is consistent with the purpose of the survival statutes, which is to obviate the harshness of the common law rule that all actions against corporations abate upon dissolution.
>
> \* \* \* \* \* \*
>
> We note that the purpose of both the common law rule and the survival statutes is to provide a definite point in time at which the existence of a corporation and the transaction of its business would be terminated. \* \* \* It would not affect the purpose of the statute nor do violence to our principles of statutory construction to *permit suit on claims arising either before or after dissolution where the suit is brought within the two-year survival period,* particularly where, as here, the acts of the corporation which gave rise to the alleged liability occurred prior to dissolution. We interpret the Missouri survival statute to permit suit on such post-dissolution claims.

*Id.* (citations omitted) (emphasis supplied).

Thus, although a corporation may acquire a cause of action after dissolution, it loses its capacity to sue once the survival period runs. Before the expiration of the three year period Car-Del had the capacity to sue. Had the assignment been made within this period it would have been valid.

## II.

Mattsons seek to overturn the trial court's refusal to award them attorney fees. They claim they are entitled to fees for several reasons: (1) attorney fees are allowed under Minn. Stat. § 549.21 (1984) which allows an award if a party has acted in bad faith as to an issue in litigation; (2) that Lloyds' bad faith violates Minnesota Unfair Claims Practices Act, Minn. Stat. § 72A.20, subd. 12(6) (1984) by making it a general business practice to refuse to settle within policy limits, authorizing an award of fees under Minn. Stat. § 8.31, subd. 3a (1984); (3) Minnesota caselaw authorizing

recovery of fees for an insurer's breach of fiduciary duties; and (4) caselaw authorizing recovery of fees where an individual is forced into litigation as a result of the wrongful act of another. We affirm the trial court on this issue.

■ The former version of section 549.21 authorized an award of fees where a party acted in bad faith as to an issue in litigation. Minn. Stat. § 549.21 (1982). Though an amendment by Laws 1982, c. 601 § 2 deleted the requirement that the bad faith *relate to an issue in litigation,* subsequent appellate court decisions have interpreted the statute as it existed prior to the amendement. *Bar/Nelson, Inc. v. Tonto's, Inc.,* 336 N.W.2d 46, 53 (Minn.1983).

We are bound to follow these cases. No evidence of bad faith was found by the trial court in the case tried before it. Accordingly no award is authorized under this section.

■ The trial court's other reasons for denying Mattsons' claim are equally persuasive. Respondents argue that Minn. Stat. § 8.31, subd. 3a provides a basis for an award of fees. It provides that any person injured by a violation of any of certain consumer protection laws referred to in subdivision 1 of the statute may bring a civil action and recover attorney fees. *Id.* Respondents maintain that Lloyds is in violation of section 72A.20, subd. 12(6) of the Unfair Claims Practices Act, and therefore that they can claim attorney fees under § 8.31. It is a violation of section 72A.20, subd. 12(6) to act as follows:

> Causing or permitting with such frequency to indicate a general business practice any unfair, deceptive, or fraudulent act concerning any claim or complaint of an insured or claimant including, but not limited to, the following practices:
>
> \* \* \* \* \* \*
>
> (6) not attempting in good faith to effectuate prompt, fair, and equitable set-

tlements of claims in which liability has become reasonably clear;

Minn. Stat. § 72A.20, subd. 12(6) (1984).

As the trial court pointed out, subdivision 1 of section 8.31 does not refer to this statute. Furthermore, the court found there was no evidence of a general practice of bad faith refusal to settle. Respondent has not shown the court's decision to be error.

The caselaw cited by Mattsons authorizing attorney fees against an insurer for breach of its fiduciary duties deals only with an insurer's refusal to defend or indemnify its *insured. See Brown v. State Auto & Gas*, 293 N.W.2d 822, 826 (Minn. 1980); *Morrison v. Swenson*, 274 Minn. 127, 138, 142 N.W.2d 640, 647 (1966). These cases do not authorize an award of fees to Mattson. Lloyds' duties to defend and indemnify were owed to its insured, Car-Del, not to Mattsons. *See Short v. Dairyland Insurance Company*, 334 N.W.2d 384, 387 (Minn.1983). Furthermore, Lloyds did defend its insured and did indemnify its insured for the policy limits.

■ We also reject the argument that Mattsons should be awarded fees because Lloyds forced them into litigation. The trial court viewed the cases cited by Mattsons in part as a restatement of the right to fees where an insurer has refused to defend or indemnify its insured and has thereby caused its insured to litigate with a third party. *See First Fiduciary Corporation v. Blanco*, 276 N.W.2d 30 (Minn.1979); *Lundeen v. Lappi*, 361 N.W.2d 913, 917 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Apr. 18, 1985).

We agree with this analysis. The rule is that:

> [W]here the wrongful act of the defendant thrusts the plaintiff into litigation with a third person, the plaintiff may recover from the defendant the expenses incurred in conducting the litigation against the third party, including attorneys' fees.

*First Fiduciary Corporation*, 276 N.W.2d at 34 (quoting *Dworsky v. Vermes Credit*

*Jewelry*, 244 Minn. 62, 70, 69 N.W.2d 118, 124 (1955)). The wrongful act was Lloyds bad faith refusal to settle on Car-Del's behalf. The wrong was committed against Car-Del, not Mattsons.

## DECISION

Car-Del's purported assignment of its bad faith claim was invalid because it was made after the three year limitation period ran. Mattsons' claim for attorney fees was properly denied.

In light of our decision it is unnecessary to decide questions relating to interest.

Affirmed in part, reversed in part.

LESLIE, J., dissents.

LESLIE, Judge (dissenting).

Because I disagree with the majority's conclusion that respondent's claim was barred by the three-year statute of limitations, I respectfully dissent. In my opinion the bad faith claim against appellant was an asset which was omitted from the winding up of the corporation and could be, and was, validly assigned to respondent. To hold otherwise would allow an insurer who acted in bad faith to protect itself by using its insured corporation's dissolution as a weapon to escape liability.

Minn. Stat. § 301.56 (1980) (repealed 1981) states in part that:

> The title to any assets omitted from the winding up shall vest in the trustee or trustees, or receiver or receivers, for the benefit of the persons entitled thereto and shall be administered and distributed accordingly.

The bad faith law suit against appellant was clearly an asset of the corporation which was omitted from its winding up. As such, the suit vested in the trustee who properly assigned it to respondent. The fact that this occurred after three years from the date of the corporation's termination is not dispositive because § 301.56 clearly does not limit itself to three years.

I find no Minnesota cases that are controlling on this issue. In other jurisdictions, however, corporations have been in-

volved in actions after the time limit prescribed by corporate survival statutes. *See Saletri v. Clark,* 13 Wis.2d 325, 108 N.W.2d 548 (1961); *Addy v. Short,* 47 Del. 157, 89 A.2d 136 (1952); *Woman's Relief Corps No. 1 Michigan v. South Haven City & Township Library Board,* 313 Mich. 85, 20 N.W.2d 820 (1945). Although appellant contends that these cases are distinguishable because they deal with real property, Minn. Stat. § 301.56 gave the trustee the right to administer *any* "asset," and was clearly not limited to real property.

Further, in other cases corporations have been involved in actions which did not pertain to real property. *See Striker v. Chesler,* 42 Del.Ch. 578, 217 A.2d 31 (1966); *Ross v. Venezuelan-American Independent Oil Producers Association,* 230 F.Supp. 701 (D.Del.1964); *Wyoming-Indiana Oil & Gas Co. v. Weston,* 43 Wyo. 526, 7 P.2d 206 (1932). I would follow these cases and hold that respondent's claim is not barred.

Because I believe that the corporation's trustee validly assigned the claim to respondent I would affirm the trial court on that issue and address the remaining issues unanswered by the majority opinion.