Glenn D. MATTSON, et al., Appellants,

v.

UNDERWRITERS AT LLOYDS OF
LONDON, et al., Respondents.

No. C1–87–547.

Supreme Court of Minnesota.

Oct. 30, 1987.

Richard G. Hunegs, Peter W. Riley, Min-
neapolis, for appellants.

Keith J. Halleland, Brian W. Ohm, Min-
neapolis, for respondents.

OPINION

SIMONETT, Justice.

This case presents issues about the final-
ity of an appellate court decision. We

agree with the trial court, which certified this matter to us, that the court of appeals decision finally concluded the litigation in this case and that the trial court is without jurisdiction to entertain plaintiff-appellants' post-appeal motion for summary judgment.

We begin by briefly describing the litigation up to the time of the court of appeals decision. In June 1977 Glenn D. Mattson and members of his family obtained a personal injury dramshop judgment against Car–Del, Inc., a Minnesota corporation. Car–Del's insurer, Underwriters at Lloyds of London, paid the Mattsons its policy limits of $100,000, but this left $156,562.65 of the judgment unsatisfied. About this time, the Mattsons discovered that Car–Del, while the dramshop suit was pending, had filed a certificate for voluntary dissolution. The Mattsons decided to sue Lloyds for the unsatisfied portion of their tort judgment on the theory that Lloyds had acted in bad faith towards Car–Del, its insured, in not settling the dramshop claim within the policy limits prior to trial. Plaintiff Mattsons, therefore, obtained an assignment of Car–Del's bad faith claim from the former trustee in dissolution and commenced this action against defendant Lloyds. In pretrial motions, defendant Lloyds contested the validity of Car–Del's assignment, contending it was time barred because made after the corporation had completely dissolved.[1] The trial court nonetheless granted plaintiffs' partial summary judgment, holding that the assignment was not time barred and was valid.[2] The bad faith case was tried to a jury and resulted in a verdict for plaintiff Mattsons against defendant Lloyds. Judgment was entered for plaintiffs in the amount of the unsatisfied dramshop judgment.

Lloyds appealed the judgment to the court of appeals. Lloyds did not contest the jury verdict of bad faith, but instead renewed its claim that Car–Del's assignment of its bad faith cause of action to the Mattsons was time barred and invalid. Mattsons cross-appealed the trial court's denial of attorney fees and reduction of interest on their judgment.

Car–Del had filed its certificate for voluntary dissolution on July 29, 1976, and Lloyds pointed out to the court of appeals that plaintiff Mattsons had not obtained Car–Del's assignment of its bad faith claim until September 15, 1979, which was after the 3–year winding-up period for the corporation's affairs had expired. Relying on Minn.Stat. § 300.59 (1986),[3] Lloyds argued that because Car–Del could not itself sue after the 3–year winding-up period, neither could it assign what it could not sue. The Mattsons contended the trial judge had properly upheld the validity of the assignment by relying on a different statute, Minn.Stat. § 301.56 (1980) (repealed 1981), which says, "The title to any assets omitted from the winding up shall vest in the trustee * * *." They argued before the court of appeals that Car–Del's bad faith claim was an omitted asset, and, because section 301.56 specifies no time for ending a trustee's duties, the assignment of Car–Del's claim, executed by the former trustee, was valid. The briefs filed with the court of appeals did not mention any additional grounds, as yet undecided before the trial

1. Glenn Mattson's accident was April 1, 1973. In January 1976, the Mattsons commenced their dramshop action against Car–Del, Inc. On July 29, 1976, Car–Del filed a certificate of voluntary dissolution with the Secretary of State, which started the 3–year winding-up period under Minn.Stat. § 300.59 (1986). The dramshop action was tried in April 1977 and Mattsons' tort judgment was entered on June 22, 1977. Only thereafter, say the Mattsons, did they learn of the dissolution. On July 29, 1979, the 3–year winding-up period ended. On September 15, 1979, the Mattsons obtained an assignment of Car–Del's bad faith claim from the former trustee in the dissolution, and, in 1980, commenced this suit against Lloyds.

2. Defendant Lloyds appealed this summary ruling to the supreme court. This court declined to take discretionary review of the partial summary judgment, preferring that all issues be first tried at the trial court level.

3. "[A] corporation whose existence terminates by limitation, forfeiture, or otherwise continues for three years after the termination date for the sole purpose of prosecuting and defending actions, closing its affairs, disposing of its property, and dividing its capital." Minn.Stat. § 300.59 (1986).

court, why the Mattsons should have standing to sue.

In April 1986, the court of appeals decided *Mattson v. Underwriters at Lloyds of London*, 385 N.W.2d 854, 859 (Minn.App. 1986), adopting Lloyd's position. The court held that "Car Del's purported assignment of its bad faith claim was invalid because it was made after the three year limitation period ran." *Id.* at 859. The court further ruled that Mattsons' claim for attorney fees had been properly denied and "[i]n light of our decision it is unnecessary to decide questions relating to interest." The opinion concluded, "Affirmed in part, reversed in part." One judge dissented, agreeing with plaintiffs that Car–Del's assignment of an "omitted asset" was valid. Mattsons' petition to this court for further review was denied.

We now reach the events giving immediate rise to this second appeal. Eight months after our denial of further review of the court of appeals decision, plaintiffs Mattson returned to the trial court, contending the case was not yet at an end, and moved for summary judgment. Plaintiffs' motion was made on several grounds, including the grounds that even if Car–Del's assignment was time barred, the underlying dissolution proceeding was itself invalid so that the invalidity of the trustee's assignment was moot. Plaintiffs reasoned that by dissolving without providing for the payment of Mattsons' dramshop judgment, Car–Del had failed to comply with the terms of the voluntary dissolution statute and, therefore, had not legally dissolved. *See* Minn.Stat. § 301.48 (1980) (repealed

1981). They contended this was not a new theory, but a theory they had urged on the trial court earlier but which the trial court had never decided, and which, therefore, the court of appeals could not have reviewed.[4] The trial court denied the motion, concluding that it lacked jurisdiction and, in any event, the issues raised by plaintiffs were without merit. The trial court certified the questions raised by plaintiffs' motion as important and doubtful without framing specific issues for this court to consider.[5]

We believe the dispositive question, which is also the threshold question, may be stated as follows: Does the appeals court decision preclude plaintiffs from raising the issues they now seek to raise in their post-trial, post-appeal motion for summary judgment?

**I.**

The parties tend to frame the threshold issue in terms of res judicata and law of the case. Neither doctrine quite fits. If plaintiffs had commenced a new action to raise the issues they now seek to assert, an issue of res judicata would be squarely presented, but Mattsons point out that they are not bringing a new action. In res judicata, issues litigated or which could have been litigated in a former action cannot be relitigated in a subsequent action. *See Kaiser v. Northern States Power Co.*, 353 N.W.2d 899, 902 (Minn.1984); *Mattsen v. Packman*, 358 N.W.2d 48, 49–50 (Minn. 1984). On the other hand, law of the case ordinarily applies where an appellate court

---

**4.** In addition to their claim that the dissolution was invalid, plaintiff Mattsons also claim, alternatively, that the assignment should be upheld as an assignment from the shareholders rather than from the trustee, or that an assignment is not necessary because plaintiffs have a direct cause of action against the insurer. Plaintiffs frame the "undecided issues" as follows:

1. Is an attempted corporate dissolution which fails to marshall the single largest asset and pay the single largest liability to the detriment of a judgment creditor, invalid as a matter of law?

2. Where a corporation dissolves without adequately providing for creditors, may a judgment creditor enforce any cause of action

belonging to the corporation notwithstanding the inability of the dissolved corporation to bring suit?

3. Does property of a dissolved corporation vest in its shareholders so that they may validly assign it to a judgment creditor for prosecution?

4. Where the judgment debtor is dissolved and has no interest in pursuing a bad faith claim, does a judgment creditor have a direct cause of action against an insurer for bad faith?

**5.** On the need to frame proper questions, *see Duxor Investment Aktiengesellschaft v. Investment Rarities, Inc.,* 413 N.W.2d 502 (Minn.1987).

has ruled on a legal issue and has remanded the case to the lower court for further proceedings. *Brezinka v. Bystrom Brothers, Inc.*, 403 N.W.2d 841, 843 (Minn.1987). Issues determined in a first appeal will not be relitigated in the trial court nor re-examined in a second appeal; however, issues not determined in the first appeal may, on remand, be litigated. *Id.* The reconsideration of a case on remand (and a subsequent appeal) is a continuation of the original proceeding. *Maher v. Maher*, 393 N.W.2d 190, 193 (Minn.App.1986). Plaintiffs contend law of the case should apply here, thus permitting a decision on their undecided issues, but defendant Lloyds argues the doctrine does not apply because, in the first appeal, there was no remand to consider any further issues.

■ The question, as we see it, is one of the finality of appellate judgments. The same policy considerations behind res judicata and law of the case—namely, the bringing of litigation to a definite conclusion with reasonable dispatch—support the finality of appellate decisions. To this end, there are various rules and principles governing appellate practice, such as the requirements for preserving error below for appellate review, *e.g.*, Minn.R.Civ.P. 51; the rule that parties may be bound on appeal by the theories on which the case was tried below, *see, e.g., Annis v. Annis*, 250 Minn. 256, 263, 84 N.W.2d 256, 261 (1957); the rule that an appellate court will not ordinarily consider an issue not first presented to the trial court, *Gruenhagen v. Larson*, 310 Minn. 454, 457, 246 N.W.2d 565, 568 (1976); the prohibition against the trial court entering a partial final judgment unless determining there is no just cause for delay, *see* Minn.R.Civ.P. 54.02; and the rule requiring parties in their appellate briefs to state concisely the issues involved and the precise relief sought, *see* Minn.R. Civ.App.P. 128.02. These various rules aim to structure the litigation into a form that enables the appellate court, in most in-

stances, to dispose of the case as completely and finally as possible. With an appeal properly structured, the appellate court then affirms, reverses, modifies or takes such other action as the interests of justice may require. Minn.R.Civ.App.P 103.04. If complete finality cannot be accomplished, if something remains to be done by the court below, the appellate court will ordinarily so indicate, usually by a remand with directions or a mandate which the trial court must follow. Consequently, the scope of the finality of an appellate decision depends on what the court intends to be final, and this is determined by what the court's decision says. "The effect of the reversal of a judgment depends upon the ground upon which it is based, as expressed in the decision reversing it." *Chicago Great Western Railroad Co. v. Zahner*, 149 Minn. 27, 29, 182 N.W. 904, 904 (1921).

■ In this case, we believe the court of appeals, in reversing plaintiffs' judgment, intended its reversal to conclude finally the litigation. The court reversed the money judgment for plaintiffs Mattson. No remand for any further proceedings was stated or implied. From the court's holding that plaintiffs lacked standing to maintain Car–Del's bad faith action, it necessarily followed that plaintiffs could not recover from Lloyds. Consequently, the court of appeals reversed the judgment for plaintiffs. The judgment being reversed, nothing remained to be litigated, and the case was completely concluded.

The court of appeals was unaware that anything remained to be litigated. The decisive issue presented to it was plaintiffs' standing to sue, and this ultimate issue was posed solely in terms of whether the trustee's assignment was valid for the reasons stated by the trial court. By so framing the issue, the parties represented to the appellate court that the validity of the dissolution itself was not being challenged, and the appeals court proceeded on this representation.[6] Ordinarily, then, the ap-

---

**6.** It is clear that the court of appeals understood the parties were not questioning the validity of the dissolution. Thus the court observes in its opinion, "At common law in Minnesota the 1977

judgment against Car–Del would have been a nullity since the effect of dissolution was that the corporation wholly ceased to exist for any

pellate decision on the ultimate issue should be conclusive.

Plaintiffs contend, however, that finality should not be accorded the court of appeals decision because of the unusual procedural history of this case.

## II.

The Mattsons claim their post-trial, post-appeal motion for summary judgment "raises issues which were not, and could not have been, decided prior to the Court of Appeals decision * * *."

It will be recalled that before trial of the bad faith action, plaintiffs had moved for partial summary judgment on their right to sue. At that time they argued (1) the assignment obtained from Car–Del, even though obtained after the 3–year winding-up period, was valid under Minn.Stat. § 301.56 (the omitted assets statute); and, apparently, (2) the dissolution proceeding itself was of no force or effect.[7] Plaintiffs argue, therefore, that their theory of the invalidity of the dissolution has never been litigated, because, until the court of appeals reversed, there was never a need to litigate that issue. In effect, plaintiffs are not so much seeking a "new" trial as an additional trial on issues presumably severed or otherwise preserved at the first trial.

It seems to us, however, that plaintiffs were under an obligation to preserve their alternative theories for standing to sue. While they had won the "first round" when the trial court ruled their assignment was valid, plaintiffs knew that defendant Lloyds was intending to (and did) appeal that issue; and if plaintiffs had any concern about sustaining the trial court's ruling on appeal, they should have taken measures to preserve their other arguments on standing. Plaintiffs could have renewed their motion to the trial court for a ruling on their alternative theories, either at or after the bad faith trial, explaining to the judge why such a ruling was needed. *See* footnote 7, *supra.* Or, once Lloyds had appealed, plaintiffs could have moved in the court of appeals for a remand directing the trial court to decide the undecided issues so that all issues would then be brought before the appellate court.[8] Or, at the least, plaintiffs in their brief to the court of appeals should have explained the situation of the undecided issues and asked, if the court of appeals reversed on the 3–year limitation issue, that the matter of standing be remanded to the trial court for a decision on the reserved, alternative theories. *See* Minn.R.Civ.App.P. 128.02 (brief should contain "precise relief sought"). Failing to take some such precaution and then attempting to raise the "new" theory leaves a party vulnerable to

purpose." *Mattson v. Underwriters at Lloyds of London,* 385 N.W.2d 854, 857 (Minn.App.1986).

7. We say plaintiffs "apparently" raised the separate issue of the validity of the dissolution because the record is not clear that this issue was explicitly raised, except perhaps obliquely as a reason for upholding the assignment. In their brief to the trial court in September 1981 on the cross-motions for summary judgment, plaintiffs argued that a corporation legally existing at the time of the tort could not by dissolving escape liability for that tort. But this argument was made in support of the argument that, as in *Gassert v. Commercial Mechanism, Inc.,* 277 N.W.2d 392 (Minn.1979), liability should continue after dissolution. Thus, plaintiffs' brief states: "The jury verdict [in the dramshop action] was rendered less than one year after the commencement of dissolution proceedings, well within the applicable three-year period. Consequently, Car–Del's attempt to evade responsibility for its torts by commencing dissolution proceedings was of no force or effect." Plaintiffs

further argued, "[T]he fact that the corporation is dissolved is irrelevant to the issue of the validity of the assignment."

From the briefs, at least, it is understandable why the trial court did not, in granting partial summary judgment for plaintiffs, mention anything about the validity of the dissolution itself, because it would not have understood that plaintiffs were asserting the invalidity of the dissolution as a grounds for upholding their standing to sue separate from the assignment. Defendant-respondent Lloyds, however, does not seem to dispute the Mattsons' claim that the validity of the dissolution was raised as a separate issue before the trial court and we will assume this was the case for the purposes of this appeal.

8. It was not possible for plaintiffs to file a notice of review under Minn.R.Civ.App.P. 106 because, the trial court not having ruled on the alternative theories, there was no adjudication for the appellate court to review.

a claim that the party is impermissibly shifting theories on appeal or is seeking to revive an abandoned theory.

We might add that after the court of appeals' decision plaintiffs petitioned the supreme court for further review. In this petition, besides contending that the court of appeals had erroneously applied the (since repealed) winding-up statute, plaintiffs for the first time since their pretrial motion for summary judgment raised their alternative theory. Their petition stated the issue to be:

> Is a "dissolution" which fails to list a corporation's largest asset and fails to pay its largest liability to the detriment of creditors valid?

> Court of Appeals did not decide.

The petition did not claim, nor could it, that the court of appeals had overlooked an issue it should have decided. Rather, the Mattsons alleged this was an issue that had never been litigated and, indeed, "was *never* before the trial court." (Petitioners' emphasis.) Defendant Lloyds responded that this was a new issue being raised for the first time. Considering the petition under the criteria of Minn.R.Civ.App.P. 117, subd. 2, this court denied further review.[9]

### III.

Throughout this litigation the issues have had a chameleon-like quality. As the dissent points out, at oral argument plaintiffs claimed that Lloyds encouraged Car–Del to dissolve secretly to escape a just debt. This, however, is an impermissible shift in the theory of recovery on which this lawsuit has been maintained. If plaintiffs are now claiming that Lloyds conspired with Car–Del to dissolve the corporation, this would be an entirely different cause of action which, not having been asserted in this case and not involving the standing issue, is simply a different lawsuit.

**9.** A denial of a petition for further review by this court is of no precedential effect and is not to be construed as approving or disapproving the court of appeals decision. *See Murphy v.*

We hold that the court of appeals decision on plaintiffs' lack of standing to maintain the bad faith settlement action is to be accorded complete finality. We answer the threshold certified question in the affirmative and need not reach the other questions.

Question answered.

YETKA and WAHL, JJ., dissenting.

SCOTT, J., took no part in the consideration or decision of this case.

YETKA, Justice (dissenting).

I dissent from the majority opinion for the following reasons:

At the outset, I disagree with the majority's determination that the necessity for finality of litigation justifies ending this litigation. The majority's decision that this case ended with the court of appeals' decision, which made no mention of remand, leads to a manifestly unfair result. The majority reasons that the standing issue was finally decided at the court of appeals when it held that the assignment from the Car–Del trustee was invalid. However, this ignores the possibility that plaintiffs may have a claim against Lloyds independent of the assignment. Plaintiffs' attorney maintains that Lloyds of London encouraged Car–Del to dissolve quietly and secretly so that, unknown to plaintiffs, the 3–year statute would bar plaintiffs from collecting the deficiency judgment against Car–Del and, therefore, bar Car–Del's claim against Lloyds of London. Such a claim stands independent of the assignment.

Public policy demands that corporations not be permitted to avoid existing liabilities merely by secretly dissolving. The importance of this policy cannot be over-emphasized. To preclude plaintiffs from litigating the issue of Car–Del's dissolution opens the door to the possibility that a tort victim with a judgment against a corporation will not be justly compensated because the corporation was illegally dissolved. Such a

*Milbank Mutual Insurance Co.,* 388 N.W.2d 732, 739 (Minn.1986). Denial of the petition simply meant there were not three votes for granting the petition.

manifestly unfair result is contrary to a public policy and is not justified by any of the concerns regarding finality of litigation. Furthermore, the theories of *res judicata* and law of the case, which embody the notion of finality of litigation, are admittedly inapplicable in this case. Moreover, even when such doctrines are technically applicable, a court should restrain their use where a public policy would be violated or an unjust result would follow. *See Garner v. Giarrusso,* 571 F.2d 1330 (5th Cir.1978); *Tipler v. E.I. duPont de-Nemours and Co.,* 443 F.2d 125 (6th Cir. 1971); *Gollner v. Cram,* 258 Minn. 8, 102 N.W.2d 521 (1960); *Bertrand v. Johns-Manville Sales Corp.,* 529 F.Supp. 539 (D.Minn.1982).

The basis of the majority's concern for finality of litigation in this case lies in what it believes plaintiffs should have done on appeal. I cannot agree with the majority's finding that plaintiffs are precluded from continuing this litigation because they did not preserve alternative theories of standing. In this case, there was no prior need to litigate the alternative claim regarding Car–Del's dissolution since plaintiffs had succeeded at the trial court on the assignment theory. The only issue appealed to the court of appeals was whether the assignment was valid. It is unfair now to say that plaintiffs should have litigated their alternative theory prior to the appeal. Once plaintiffs have prevailed in trial court, they should not be immediately required to argue and defend all alternative theories which were not at issue because of the trial court's decision.

No other legal or policy-based reasons exist for precluding a direct suit against Lloyds of London even in the absence of an assignment from Car–Del. The original purpose in not allowing a direct suit against an insurance company was to permit a jury trial on the merits between the original parties without knowledge of insurance coverage. Here, there was no need for such protection because the original lawsuit was brought between individuals, and a verdict of over $250,000 was secured. Then and only then, it was determined separately that Lloyds of London had not made a good-faith defense. They had an opportunity to settle the case within the policy limits and did not do so. Why should Lloyds now have the benefit of our common law rule that one can't sue an insurance company directly? In this case, I would hold that the plaintiffs may sue Lloyds of London directly to recover the deficient balance.

Finally, I disagree with the majority because it writes into the 3–year corporate dissolution statute a statute of limitations. The very purpose of the statute of limitations is to prevent stale claims from being brought, where witnesses are dead or have moved away, and evidence is hard to discover. The courts have always looked with disfavor on extending statutes of limitations beyond the original intent. Lloyds of London is harmed in no way because of any delay in this case. They were notified of the original claim when brought and helped defend against it all along. The case has been fully litigated on its merits against its original insured and, in a separate lawsuit, a determination was made that Lloyds of London had defended in bad faith. Thus, there can be no argument that Lloyds has ever been prejudiced.

In sum, the need for finality in litigation does not outweigh the manifest injustice that would result if plaintiffs were precluded from continuing this litigation. I would permit plaintiffs to show that the dissolution was in derogation of the statute and beyond its intent and scope. Further, I would permit them to show that the dissolution, which, in effect, was a substitute for bankruptcy, effectuated a result obviously not within the original intent of the statute. Finally, plaintiffs should be allowed to proceed either in the manner they sought to proceed here or in a separate, direct lawsuit against Lloyds of London.

WAHL, Justice (dissenting).

I join the dissent of Justice YETKA for reversal of the decision of the court of appeals.