### McCOWEN v. DUMONT et al.
### No. 1562.

District Court, W. D. Missouri, W. D.

April 12, 1944.

---

Theo C. Anderson, of Kansas City, Mo., for plaintiff.

C. H. Bailey and Ira Burns, both of Kansas City, Mo., for defendant.

OTIS, District Judge.

For a certain period plaintiff occupied Apartment 202 in a small building in Kansas City, Missouri, in which the defendant, Marie Louise Dumont, an aged and invalid widow, owned a life interest. Mrs. Dumont was entitled to all lawful rents. Her son, Harry Dumont, a plumber by trade, also sued as a defendant, collected the rents for his invalid mother. (There was a showing at the trial that the mother is now completely incompetent mentally). The plaintiff, believing that the rent collected from her was at a slightly greater rate per week than the rent charged for the same apartment on March 1, 1942, has brought this suit for triple damages and a reasonable attorney's fee. In her complaint she alleges the rent on Apartment 202 on March 1, 1942, was $6.34 a week, that that, therefore, was the lawful rate, but that she paid for the period of her occupancy, from January 7, 1943 to July 22, 1943, at the rate, for four weeks, of $8.25 a week, and thereafter at the rate of $8 a week. Her claim is that she was overcharged for the entire period in a total amount of $39.50.

The suit (the complaint is in twenty-four counts) is for a total of $1,200 and an attorney's fee which the only testimony on the subject indicates also should be $1,200. In other words, plaintiff would punish the widow, who is said to have overcharged plaintiff $39.50, by a judgment against her in the amount of $2,400. Mirable dictu!

Findings of Fact

At the end of the trial tentative findings of fact were announced. They are (somewhat modified) as follows:

1. The owner of the apartment building located at 3033 Forest, Kansas City, Missouri, in which was Apartment 202, on March 1, 1942, was Matthew D. Dumont, who died in September, 1942. At the time of the institution of this suit and at the time of the trial, Mrs. Matthew D. Dumont (Marie Louise Dumont), one of the defendants here, owned a life estate in the building referred to.

2. On March 1, 1942, the rent charged and collected for Apartment 202 by Matthew D. Dumont was $6.34 a week. That was the maximum rent chargeable for Apartment 202.

3. The plaintiff occupied Apartment 202 from January 7, 1943, to July 22, 1943. She agreed to pay rent at the rate of $8.25 a week, which was later reduced to $8 a week, the rent to be payable in advance. Only one agreement was made (except for the modification in the amount of rent).

Plaintiff did pay at the rate of $8.25 a week for four weeks and thereafter at the rate of $8 a week. There were twenty-four payments and receipts of rent. The amount paid exceeded the amount chargeable in the total sum of $39.50.

4. The defendant, Harry Dumont, collected rent from the plaintiff on Apartment 202 as agent for Mrs. Matthew D. Dumont (Marie Louise Dumont), who was entitled to receive whatever rent was legally due on any apartment in the building.

5. There is no competent evidence that Marie Louise Dumont did not know that the rent charged for Apartment 202 on March 1, 1942, was $6.34 a week.

### Discussion

■ We do not discuss the question whether Harry Dumont, who collected rent as agent, is liable. It is too clear that he is not. We do not discuss the question whether if Marie Louise Dumont in good faith believed she was not charging more than the permissible maximum that would be a defense. There was no competent evidence supporting such a defense.

The real question in the case is whether every receipt of rent constitutes a separate violation for which triple damages (or $50, if that is more than triple damages) can be sought? Can the plaintiff, having paid rent twenty-four times, recover for twenty-four violations?

The applicable statute, 50 U.S.C.A.Appendix § 925(e) reads:

"If any person selling a commodity violates a * * * price schedule prescribing a maximum price * * * the person who buys such commodity * * * may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is greater, plus reasonable attorney's fees * * *. For the purposes of this section the * * * receipt of rent for defense-area housing accommodations shall be deemed the * * * selling of a commodity * * *."

■ The thing this statute makes punishable by triple damages is the "selling" of "a commodity" above the maximum price permissible. If we were dealing with some such commodity as, let us say, a refrigerator, the meeting of minds whereby a price was determined, delivery made, and title passed clearly would be the offense, the "selling." If the agreement was

that the purchaser should pay in ten equal installments, there would not be ten sellings and ten offenses. There would be only one selling and only one offense. When the "commodity" is the right to occupy a given habitation, the "selling" of the commodity" would seem to be the agreement whereby the right to occupancy is given. The fact that the consideration is to be paid in installments, or weekly, or monthly, logically would not transform one selling into many sellings. When on January 1 A rents a cottage from B for $50 a month, that is a single agreement. When A pays his next rent on February 1, none would say a new agreement was then entered into. Nor on March 1.

The language in the statute—"For the purposes of this section the * * * receipt of rent for defense-area housing accommodations shall be deemed the * * * selling of a commodity"—is not as clear as it might be. It does give some verbal support for plaintiff's theory. Our judgment is that what is meant is that this right to occupy housing accommodations is a "commodity' (that would not otherwise be apparent) and that if rent is asked and received there is a "selling" of that commodity. We do not believe that the language used means that every receipt of rent is a separate selling, a selling anew, of the same commodity.

■ The statute must be read as a whole. 50 U.S.C.A.Appendix § 901 et seq. Another part of the statute makes a selling of a commodity above the permissible price, if done "wilfully," a criminal offense. Section 925(b). Criminal statutes must be strictly construed. The criminal provision and the provision we are here considering have the same meaning as to what is the offense. One who holds with plaintiff must also be prepared to maintain that a landlord who wilfully overcharges, in a six-month period, in a total amount of $39.50, on a small apartment, if there were twenty-four rent payments, might be fined $120,000 ($5,000 for each payment) and sent to jail for twenty-four years (a year for each offense). Such an absurd interpretation should be avoided if that is possible.

### Conclusions of Law

1. Defendant Harry Dumont is liable to plaintiff in no amount.

2. Defendant Marie Louise Dumont is liable to plaintiff in the amount of $118.50, being three times $39.50 and for a rea-

sonable attorney's fee of a like amount. (The court finds as a fact that a reasonable attorney's fee is $118.50).

### Judgment and Decree

This cause coming on to be heard, on the pleadings, the evidence introduced, and the argument of counsel, and the court having made findings of fact and stated conclusions of law, and being fully advised in the premises, it is ordered, adjudged and decreed:

1. That the plaintiff have and recover from the defendant, Marie Louise Dumont, the sum of $118.50 and the further sum of $118.50 as an attorney's fee and her costs in this behalf expended.