KOPIO'S, INC. v. BRIDGEMAN CREAMERIES, INC.,
AND ANOTHER.
HUGH YOUNG, THIRD-PARTY DEFENDANT.

79 N. W. (2d) 921.

December 14, 1956—No. 36,950.

*Butchart & Fredin,* for appellant.

*Hugh Young* and *Thomas Carr,* for respondents Kopio's, Inc., and Hugh Young.

DELL, CHIEF JUDGE.

This is an action to recover personal-property damages which occurred in the destruction of a hotel by fire allegedly caused or allowed to spread through the negligence of the defendants. The defendant Bridgeman Creameries, Inc., appeals from an order denying its motion to dismiss said action on the ground that it had not been properly served with process. Since Bridgeman Creameries, Inc., is the only defendant involved on this appeal, it shall hereafter be referred to simply as the defendant.

The material facts as established by the record or agreed upon by counsel are as follows: On March 16, 1949, fire destroyed a large downtown Minneapolis building in which were located the plaintiff's hotel and the defendant's ice-cream parlor. On December 21, 1951, the stockholders of the defendant corporation adopted a resolution calling for the discontinuance and liquidation of the corporation as of February 29, 1952, under the direction of a trustee in dissolution. On February 29, 1952, a certificate of this resolution was filed with the secretary of state,[1] and the trustee distributed all the assets of the defendant corporation to its stockholders. Thereafter the defendant did not conduct any business whatsoever.

On November 20, 1953, the summons and complaint in this action were served on one Karl Schulze as service on the defendant. It is conceded that until this date the defendant had no knowledge of any claim on the part of the plaintiff. Schulze had been employed by the defendant as a "branch plant manager," but his employment was terminated February 29, 1952, and since then he has served as

---

[1] M. S. A. 301.47, subd. 2, provides that the appointment of the trustee shall not be operative until a certificate is filed with the secretary of state "setting forth the resolution and the manner of adoption thereof, * * *."

an employee of Land O' Lakes Creameries, Inc., in its Bridgeman Creameries Division.

On December 1, 1953, a certificate of completion of dissolution and winding up was filed with the secretary of state as required by M. S. A. 301.56.[2] An answer was subsequently filed by the defendant raising the issue of the sufficiency of the service of the process and, on January 5, 1956, the defendant moved for dismissal.

■ The first question involved is whether or not the defendant was in existence for the purpose of being sued at the time of the alleged service of the summons. A corporation, as a creature of statute, has such rights and responsibilities, such powers and limitations, as are accorded it by the legislature. Minnesota corporations, including the defendant herein, are specifically granted the power to sue and be sued.[3] However, in the absence of statutory extension, all such powers of a corporation abate at the end of the corporate existence,[4] including the power to sue and be sued.[5] The defendant contends that, because of the resolution of December 21, 1951, and the complete liquidation and discontinuance of business as of February 29, 1952, its corporate existence was terminated as of this latter date and thereafter it could not be sued.

The procedure for voluntary dissolution of a corporation in this state is specifically regulated by statute,[6] and it is well established that, until there is compliance with such statutory prerequisites, the corporation continues in existence as a legal entity.[7] M. S. A.

---

[2]This section provides, in part, as follows:

"When a corporation has been completely wound up, * * * if the proceeding is out of court, the trustee or trustees shall sign and acknowledge a certificate stating that the corporation has been completely wound up and is dissolved.

"The * * * certificate of dissolution shall be filed for record with the secretary of state and thereupon the corporate existence shall terminate."

[3]See, M. S. A. 301.09 (2).

[4]16 Fletcher, Cyclopedia Corporations (Perm. ed.) § 8113.

[5]Id. § 8142.

[6]See, M. S. A. 301.46, et seq.

[7]See, e. g., In re Wolf Mfg. Industries (7 Cir.) 56 F. (2d) 64; State v. Taylor Interests, Inc. (La. App.) 200 So. 157; Brock v. Poor, 216 N. Y.

301.56 provides that corporate existence "shall terminate" upon the filing of the certificate of dissolution with the secretary of state. While perhaps not specifically set forth, it is apparent from this section, and we have previously held,[8] that only after the filing of such a certificate is there a formal termination of corporate existence.

It is also settled that a corporation can effect a "dissolution" in a broader sense prior to formal statutory termination.[9] For example, in A B C Brewing Corp. v. Commr. of Int. Rev. (9 Cir.) 224 F. (2d) 483, the court held that for certain tax purposes a corporation, which had ceased business activities and was in the process of dissolution, could be treated as dissolved de facto even though a dissolution certificate had not been filed. However, for the purpose of determining amenability of the corporation to suit, it is immaterial whether or not the defendant had effected such a de facto dissolution. It is well established that, if the corporation continues to exist as a legal entity, it is subject to suit regardless of whether it has ceased to do business or has liquidated its assets.[10] Inasmuch as the certificate of dissolution herein was not filed until after the alleged service of process, the defendant corporation was in existence, at least for the purpose of being sued, at the time of the alleged service.

In any event, it seems clear to us that even if the dissolution certificate as required by § 301.56 had been filed, the provisions of § 300.59 would be applicable. Section 300.59 provides:

---

387, 111 N. E. 229. The rationale behind the rule was stated in In re F. E. Schundler Feldspar Co. Inc. 70 S. D. 513, 515, 19 N. W. (2d) 337, 338, as follows:

"* * * The obvious reason for the rule is that a corporation is purely a creature of statute and that it is for the Legislature to determine the means of its dissolution."

[8]Building Industries, Inc. v. Wright Products, Inc. 240 Minn. 473, 62 N. W. (2d) 208.

[9]See 16 Fletcher, Cyclopedia Corporations (Perm. ed.) § 7967, discussing de facto dissolution.

[10]See, e. g., Jones v. Fox Film Corp. (5 Cir.) 68 F. (2d) 116; Simms v. Bialy Hdwe. & Supply Co. 187 Mich. 375, 153 N. W. 821; 16 Fletcher, Cyclopedia Corporations (Perm. ed.) § 8142, pp. 887 to 888; 15 Minn. L. Rev. 210, 218.

"* * * every corporation whose existence terminates by limitation, forfeiture, or otherwise shall continue for three years thereafter for the purpose of prosecuting and defending actions, closing its affairs, disposing of its property, and dividing its capital, but for no other purpose."

Defendant, relying upon Jacobs v. E. Bement's Sons, 161 Mich. 415, 126 N. W. 1043,[11] contends that this statute does not apply to voluntarily dissolved corporations because the words "or otherwise" must be construed with reference to the preceding words.[12] However, rules of construction are designed to aid in the ascertainment of legislative intent and cannot be used to defeat it.[13] The purpose of § 300.59 was discussed in Bowe v. Minnesota Milk Co. 44 Minn. 460, 463, 47 N. W. 151, 152, which case involved a voluntary dissolution:

"* * * At common law, dissolution implied that the corporation had wholly ceased to exist for any purpose, so that suits brought by or against it abated, and a judgment thereafter rendered against it was a nullity; that its title to its property ceased to exist, and all legal remedies to enforce debts due by or to it became extinguished. The equity rule, however, was that, while the corporation had ceased to exist, yet that its property was impressed with a trust in favor of creditors and stockholders as beneficiaries, whose interests equity would protect by appointing a trustee, if necessary, to execute the trust. To obviate the inconvenient consequences ensuing at common law, and even to a certain extent in equity, from the dissolution of corporations, our statute, (Gen. St. 1878, c. 34, § 416,) [now M. S. A. 300.59] in common with those of most states, provides that, after the dissolution of a corporation, it shall continue to be a body corporate during a term of years, for the purpose of prosecuting or

---

[11]The decision was followed, although apparently with reluctance, in Vassar Foundry Co. v. Whiting Corp. (6 Cir.) 2 F. (2d) 240. The law in Michigan has since been changed by statute. See, Comp. Laws of Mich. 1948, §§ 450.75, 450.72.

[12]Cf. M. S. A. 645.08 (3), which provides:

"General words are construed to be restricted in their meaning by preceding particular words;"

[13]Arlandson v. Humphrey, 224 Minn. 49, 27 N. W. (2d) 819.

defending actions by or against it, and for the purpose of enabling it to settle and close up its concerns, etc., but not for the purpose of carrying on the business for which it was established. Under this statute undoubtedly plaintiff could bring and maintain an action against the defendant, notwithstanding its previous dissolution, * * *."

It is obvious that, since the consequences sought to be avoided by § 300.59 did not depend upon the manner of dissolution, the section was intended to apply to voluntary as well as involuntary corporate dissolutions.

■ A more difficult question is whether the service of process on Schulze constituted service on the defendant corporation. Rule 4.03 of the Rules of Civil Procedure provides in part:

"Service of summons within the state shall be made as follows:
* * * * *

"(c) Upon a Corporation.

"Upon a domestic or foreign corporation, by delivering a copy to an officer or managing agent, or to any other agent authorized expressly or impliedly or designated by statute to receive service of summons, and if the agent is one authorized or designated under statute to receive service any statutory provision for the manner of such service shall be complied with."

The defendant concedes that Schulze was a "branch plant manager" for the defendant at the time of discontinuance of business on February 29, 1952. The showing made on the motion to dismiss discloses that, for several years prior to the fire, Schulze represented himself as managing agent of the defendant; that he conducted negotiations on water damage, service of electricity, and heating service in connection with the defendant's property; and that he signed communications apparently for the defendant on its stationery, signing as "Manager" of the defendant corporation. It cannot be seriously disputed that the nature of Schulze's duties at the time the defendant ceased to conduct business qualified him as a "managing agent," or

at least as an agent impliedly authorized to receive service of process within the meaning of Rule 4.03(c).[14]

However, it is equally clear from the evidence that, at the time service was actually made, Schulze was not a managing agent nor acting in any other agency capacity for the defendant corporation. Not only had his employment by the defendant terminated, but Schulze had become an employee of another corporation, the Land O' Lakes Creameries, Inc. As we pointed out in Derrick v. The Drolson Co. Inc. 244 Minn. 144, 148, 69 N. W. (2d) 124, 127, before one can be a "managing agent" or "agent authorized expressly or impliedly" to receive service, it is first necessary that there be an *actual* agency relationship. There was no such actual agency relationship in the instant case at the time of the alleged service.

Plaintiff, however, relies upon the general rule which is stated in 16 Fletcher, Cyclopedia Corporations (Perm. ed.) § 8146, as follows:

"* * * The authorities hold that where a corporation may be sued after its dissolution, process may ordinarily be served upon the same persons or officers who could have been properly served if the corporation had not been dissolved."

It is plaintiff's contention that, since Schulze was a "managing agent" at the time of the defendant's liquidation, he was a proper person to receive process even after the termination of his employment.

Most of the cases concerned with this rule involve corporations whose existence, having been legally terminated, has been extended for limited purposes by a statute similar to M. S. A. 300.59. Although, as previously pointed out, there had been no formal statutory termination in the instant case, we shall assume here that the rule relied upon by the plaintiff applies with equal force to corporations which have been "dissolved" in the sense that they have ceased to do business and have liquidated their assets, as did the defendant corporation.

---

[14]The tests for a "managing agent" are enumerated in Hatinen v. Payne, 150 Minn. 344, 185 N. W. 386; Dillon v. Gunderson, 235 Minn. 208, 50 N. W. (2d) 275; and Derrick v. The Drolson Co. Inc. 244 Minn. 144, 69 N. W. (2d) 124.

Some courts have apparently construed the general rule to mean, as does the plaintiff, that individuals who, because of their positions, were authorized to receive service on behalf of the corporation at the time of dissolution, continue *as individuals* to possess such authority.[15] On the other hand, the defendant contends that the rule should properly be interpreted as referring to the offices or functions designated and not to the individuals holding such offices. In other words, its position is that there still must be an officer, authorized agent, or person designated by statute to receive service.[16]

We are persuaded that this latter view is the correct one. The rationale behind the rules relating to service of process must be kept in mind. The rules are designed to limit service to persons "who could reasonably be expected to apprise the corporation of the service and the pendency of the action."[17] Certainly a former agent whose connections with and responsibilities to a corporation have been severed does not satisfy this requirement.

The results reached in the decisions supporting the plaintiff's contention appear to have been arrived at more out of necessity than desirability. For example, in Richmond Union Passenger Ry. Co. v. New York & Sea Beach Ry. Co. 95 Va. 386, 28 S. E. 573, the statute involved provided that a dissolved corporation could sue and be sued on its liabilities, but failed to provide any method for service of process until subsequently amended to permit service by publication. The court held that service upon a former president

---

[15]See, e. g., Castle's Admr. v. Acrogen Coal Co. 145 Ky. 591, 140 S. W. 1034; Lynchburg Colliery Co. v. Gauley & E. Ry. Co. 92 W. Va. 144, 149, 114 S. E. 462, 464.

[16]See, International Pulp Equip. Co. v. St. Regis Kraft Co. (D. Del.) 54 F. Supp. 745. Compare Becker v. Cooper (Tex. Civ. App.) 22 S. W. (2d) 1083, where by statute it was specifically provided that process may be served upon the person acting as president at the time of dissolution, and Warren v. Dixon Ranch Co. (Utah) 260 P. (2d) 741, 743, where the statutes provided that the authority of an agent of the corporation continued until formally revoked and hence such agent was a proper person to receive service.

[17]Derrick v. The Drolson Co. Inc. 244 Minn. 144, 150, 69 N. W. (2d) 124, 129.

of the corporation was sufficient, since otherwise the statute, as originally enacted, would have provided a right without a remedy.

We are under no compulsion to impose such an artificial result in the instant case. While our statutes provide that corporate officers may be stripped of their authority upon the adoption of a resolution for dissolution,[18] a claimant is not thereby left without a remedy. For example, he can invoke § 543.08, which provides that if a domestic corporation has no officer within the state upon whom service can be made service of summons upon the corporation may be had by serving the secretary of state in the manner specified.[19] Service on the secretary of state under such statute is uniformly held to constitute valid service on a dissolved corporation whose existence has been extended for the purpose of defending suits.[20]

In view of the underlying principle governing service of process on corporations, and considering the alternative courses that were open to the plaintiff, there can be no justification in artificially extending Schulze's agency relationship with the defendant corporation. We must conclude that the service of process on Schulze did not constitute service on the defendant. Since the plaintiff was

---

[18]M. S. A. 301.53 provides:

"Upon the adoption of a resolution for dissolution, * * * the authority and duties of the directors and officers of the corporation shall cease, except in so far as may be necessary to preserve the corporate assets, *or in so far as they may be continued by the trustee* or receiver, or as may be necessary for the calling of meetings of the shareholders." (Italics supplied.)

[19]It is also to be noted that under § 301.52 the trustee is given the power to defend actions, which would seem to carry with it, by implication, the authority to receive process.

[20]E. g., Sisk v. Old Hickory Motor Freight, Inc. 222 N. C. 631, 24 S. E. (2d) 488 (announcing the general rule relied upon by plaintiff). In International Pulp Equip. Co. v. St. Regis Kraft Co. (D. Del.) 54 F. Supp. 745, the court concluded that on dissolution an agency relationship ceases in the absence of statutory authority for its prolongation. It went on to hold that service might, nevertheless, be had on the secretary of state, saying (54 F. Supp. 749):

"* * * Since this new right is conferred [extension of corporate existence], it must have been the Legislature's intent that there should be a method to enforce the right."

apprised by the defendant's answer of the claim and possibility of defective service in ample time to make a new and proper service, he cannot now complain of undue hardship.

The statute of limitations on plaintiff's cause of action has now run, and consequently there is no occasion to determine when the three-year period specified in § 300.59 begins to run, nor whether an action commenced but not concluded within that period abates at the end of the period.

Reversed.