**LYMAN LUMBER CO., Appellant,**

v.

**FAVORITE CONSTRUCTION CO., et al., Defendants,**

**First American Title Insurance Co., d.b.a. Universal Title Insurance Co., Kenneth R. Larson, et al., Defendants and Intervenor Defendants, Respondents.**

**No. C8–94–1102.**

Court of Appeals of Minnesota.

Nov. 29, 1994.

Review Denied Jan. 25, 1995.

Gerald G. Workinger, Jr., Minneapolis, for Lyman Lumber Co.

Clinton R. McLagan, McLagan & Lerman, P.A., Mendota Heights, for First American Title Ins. Co.

James A. Wellner, Meshbesher & Spence, Ltd., Minnetonka, for Kenneth R. Larson, et al.

Considered and decided by SCHUMACHER, P.J., and FORSBERG and NORTON, JJ.

**OPINION**

NORTON, Judge.

Appellant Lyman Lumber Company commenced this action seeking a declaration that a judgment entered against Favorite Construction Company in 1983 and subsequently renewed in 1993 was a lien against real estate owned by respondent property owners. Lyman Lumber challenges summary judgment for respondents, arguing that the district court erred when it determined that the renewed judgment was void. The district court determined that the court had lacked personal jurisdiction over Favorite Construction in the action to renew the 1983 judgment because the Secretary of State had administratively dissolved that corporation prior to commencement of the judgment renewal action. We disagree and reverse.

**FACTS**

In 1982 and 1983, Lyman Lumber furnished materials to Favorite Construction, a Minnesota corporation, for the improvement of four lots in Dakota County. Favorite Construction delivered checks to Lyman Lumber for the materials and, in exchange, Lyman Lumber delivered mechanic's lien waivers to Favorite Construction. After Favorite Construction's checks were dishonored, Lyman Lumber commenced an action to recover the amount due for the materials. On May 18, 1983, judgment in the amount of $44,097.19 was entered and docketed in favor of Lyman Lumber and against Favorite Construction.

In 1992, Lyman Lumber discovered that Favorite Construction had been the record owner of four additional parcels of real estate in Dakota County when the judgment was docketed in 1983. Lyman Lumber then gave written notice of the 1983 judgment to the subsequent owners of those properties and demanded payment. Respondents, the property owners and Universal Title Insurance Company (Universal Title), refused to pay Lyman Lumber.

Lyman Lumber commenced an action in district court to renew the 1983 judgment and lien against Favorite Construction (the renewal action). On February 9, 1993, judg-

ment was entered, extending for ten years the 1983 judgment and lien. Lyman Lumber then commenced this action in district court to declare that the 1983 judgment and the renewed judgment constituted a valid lien against the above property, and to foreclose the lien against the property (the lien action). In each action, Lyman Lumber served Favorite Construction by serving process upon the Secretary of State according to Minn. Stat. § 302A.901 (1992).

Respondents moved for summary judgment, arguing that the renewed judgment was void and the 1983 judgment had expired. They contended that Lyman Lumber's service on Favorite Construction through the Secretary of State to commence the renewal action in 1992 was improper because the Secretary of State had administratively dissolved Favorite Construction in 1991. The district court agreed with respondents and granted them summary judgment. Upon the parties' stipulation, the district court directed that a final judgment be entered pursuant to Minn.R.Civ.P. 54.02. This appeal followed.

## ISSUES

1. Did the district court err in determining that service on Favorite Construction was ineffective because the corporation had been administratively dissolved pursuant to Minn.Stat. § 302A.821?

2. Did the district court abuse its discretion in denying Universal Title's motion for attorney fees?

## ANALYSIS

On appeal from summary judgment, this court must determine whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). Where, as here, no material

facts are in dispute, this court need not defer to the trial court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). This appeal involves interpretation of statutes governing dissolution of corporations under the Minnesota Business Corporations Act (the Act). Statutory interpretation is clearly a question of law. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

## I.

The district court determined that because the Secretary of State dissolved Favorite Construction as a corporation in 1991, service of process upon the Secretary of State in 1992 did not constitute personal service on Favorite Construction.[1] The district court's decision involves application of the following statutory provision for administrative dissolution of corporations that fail, as did Favorite Construction, to file annual registration statements:

> A corporation that has failed for three consecutive years to file a registration pursuant to the requirements of subdivision 1, has been notified of the failure pursuant to subdivision 4, and has failed to file the delinquent registration during the 60–day period described in subdivision 4, shall be dissolved by the secretary of state * * *. * * * A corporation dissolved in this manner is not entitled to the benefits of section 302A.781.

Minn.Stat. § 302A.821, subd. 5(a), (b) (1992).[2]

■ The district court construed the term "dissolved" in section 302A.821 to be an unambiguous direction that a corporation so dissolved was dead, had "ceased to exist as a corporation," and was not subject to suit. We disagree. This section contains provisions, as do other sections of the Act, that compel a conclusion that a corporation re-

---

1. *See* Minn.Stat. § 302A.901, subd. 2 (1992) (permitting service on the Secretary of State when corporation "fails to appoint or maintain a registered agent in this state and an officer of the corporation cannot be found at the registered office"). The Secretary of State accepted service for Favorite Construction in the renewal action and did not notify Lyman Lumber that Favorite Construction had been dissolved. We note that

the Secretary of State similarly accepted service for Favorite Construction in the lien action.

2. The 1992 legislature amended this section with an effective date retroactive to September 1, 1991. 1992 Minn.Laws ch. 477, § 2. Thus, we apply the 1992 statute to the October 1991 dissolution of Favorite Construction.

mains subject to suit after an administrative dissolution. The district court erred when it failed to construe the term "dissolved" in section 302A.821 in relation to other sections of the Act that govern dissolution of a corporation. *See Illg v. Forum Ins. Co.,* 435 N.W.2d 803, 804 (Minn.1989) (defining "benefit" and "compensation" without referring to related provisions in Workers' Compensation Act "would be impermissibly restrictive"); *Gurewitz v. Commissioner of Jobs and Training,* 444 N.W.2d 299, 301 (Minn.App. 1989) (sections of a statutory chapter relating to the same subject "should be interpreted in light of each other"). Further, 1993 amendments to sections 302A.821 and 302A.901 demonstrate that the Act has always recognized a cause of action against an administratively-dissolved corporation. We begin our analysis with the Act prior to the 1993 amendments.

Minn.Stat. § 302A.821 is not, nor has it ever been, contained in or referred to by the collection of statutes that the Act separates into a section titled "Dissolution." [3] *Cf.* Minn.Stat.Ann. §§ 302A.701–.791 (West 1985) and (Supp.1994) (setting forth statutes' history). Significantly, the legislature has not listed Minn.Stat. § 302A.821 in the section of the Act titled "Methods of dissolution," which provides:

A corporation may be dissolved:

(a) By the incorporators pursuant to section 302A.711;

(b) By the shareholders pursuant to sections 302A.721 to 302A.7291; or

(c) By order of a court pursuant to sections 302A.741 to 302A.765.

Minn.Stat.Ann. § 302A.701 (West 1985) (Supp.1994).

Minn.Stat. § 302A.821, subd. 5, refers to administrative dissolution by the Secretary of State as a "penalty." The Reporter's comments explain that this section facilitates the state's record-keeping and provides an "incentive for * * * dormant corporations to use the simplified dissolution proceedings of

this act in order to end the corporate existence." Minn.Stat.Ann. § 302A.821 Reporters Notes—1981 (West 1985). Thus, this section provides an incentive to corporations to update the records kept by the Secretary of State and a penalty for those corporations that fail to do so. The district court's interpretation that administrative dissolution under section 302A.821 provides for an immediate cessation of the corporate existence and an immediate bar to creditor actions against the corporation undermines this purpose and provides, instead, the easiest means of corporate dissolution and a quicker bar to creditor remedies than provided by other methods of dissolution.

The Act sets forth detailed procedures for a corporation to follow before it may file articles of dissolution to terminate the corporation's existence, or for a court to follow before it may order a decree of dissolution to terminate the corporation's existence. *See* Minn.Stat. §§ 302A.711–.761 (1992). Each procedure provides for payment or expiration of creditor claims and an affirmative statement by the corporation, or finding by the court, that the corporation has followed all notice requirements in the statute. *See* Minn.Stat. §§ 302A.711, subd. 2; 302A.727; 302A.7291, subd. 1; 302A.753; 302A.759.

Significantly, the Act explicitly bars claims when a corporation or court dissolves a corporation through filing articles of dissolution or a decree of dissolution. *See* Minn.Stat. §§ 302A.727, subd. 3; 302A.7291, subd. 3; 302A.759, subd. 2. Further, the Act provides a means whereby a creditor or claimant whose claims have been barred under those sections may apply to a court to allow a claim *"against the corporation"* within one year after articles of dissolution have been filed or a decree of dissolution has been entered. Minn.Stat. § 302A.781, subd. 2 (1992) (emphasis added).

Unlike the above circumstances, the Act does not contain a provision barring creditors' claims when a corporation is administra-

---

**3.** Minn.Stat. § 302A.821 was part of the Act when the legislature first adopted the new corporations act. 1981 Minn.Laws ch. 270, § 122. Although it enacted this section in 1981, the legislature provided a lead time before this sec-

tion became effective. *Id.* at § 144 (providing effective date of January 1, 1985), *amended by* 1984 Minn.Laws ch. 618, § 60 (providing effective date of January 1, 1987 for section 302A.821).

tively dissolved by the Secretary of State under Minn.Stat. § 302A.821, such as Favorite Construction was here. In fact, section 302A.821 explicitly clarifies that a corporation dissolved pursuant to that statute "is not entitled to the benefits of section 302A.781." Minn.Stat. § 302A.821, subd. 5(b). One benefit under Minn.Stat. § 302A.781 is that a creditor is limited to one year within which to bring an action against a dissolved "corporation." *Id.*, subd. 2(a). The creditor must show "good cause" why it did not previously file the claim. *Id.*, subd. 2. As Lyman Lumber points out, if the administratively-dissolved corporation immediately ceases to exist and cannot be sued thereafter, then the provision in section 302A.821, subdivision 5(b), that the "*corporation* dissolved in this manner is not entitled to the benefits of section 302A.781" is meaningless. Thus, the district court erroneously construed Minn. Stat. § 302A.821 to create an immediate bar to creditor claims against Favorite Construction, an administratively-dissolved corporation. *See* Minn.Stat. § 645.16 (1992) ("[e]very law shall be construed, if possible, to give effect to all its provisions").[4]

The district court determined that Lyman Lumber should have individually served the officers, directors, and shareholders of Favorite Construction, rather than the corporation. To support this decision, the district court cited a footnote in an opinion from this court that stated that claims made after a corporate dissolution "must be made against and served on officers, directors or shareholders individually." *Benchmark Computer Syss. v. London*, 417 N.W.2d 714, 716 n. 1 (Minn.App.1988). That case involved application of Delaware law; the cited footnote

regarding Minnesota law is dicta. In addition, the footnote is based upon the reporter's comment to Minn.Stat. § 302A.733, a section the legislature repealed in 1991. 1991 Minn.Laws ch. 49, § 28. Furthermore, Minn.Stat. § 302A.733, which was related to the effect of "articles of dissolution," does not apply here because this case does not involve the filing of articles of dissolution to obtain corporate dissolution or to bar creditors' claims.

Respondents claim, alternatively, that Minn.Stat. § 302A.783 (1992) compels a conclusion that Lyman Lumber could not bring suit against Favorite Construction. We disagree. That statute provides:

> After a corporation has been dissolved, any of its former officers, directors, or shareholders may assert or defend, in the name of the corporation, any claim by or against the corporation.

*Id.* The result respondents propose is not apparent by the terms of this statute. To support their argument, respondents refer to the Reporter's Notes to this section. However, the general comments of the reporter refer to and describe the application of provisions relating to dissolutions governed by sections 302A.701 through 302A.791. Minn. Stat.Ann. § 302A.783 Reporters Notes—1981 (West 1985). Favorite Construction did not follow any of those dissolution procedures here.

The fact that an administratively-dissolved corporation can be retroactively reinstated further supports a conclusion that the corporation has not completely ceased to exist and is still subject to suit.[5] In 1992, the legisla-

---

4. Respondent property owners also contend that the Minnesota Legislature's failure to adopt section 105 of the Model Business Corporations Act demonstrates that the legislature determined that creditor remedies do not exist after administrative dissolution of a corporation. We cannot agree. Respondent relies on the 1969 version of the code where, in context, section 105 appears to have applied only when the corporation or the court dissolved a corporation; that section did not apply to administratively-dissolved corporations as involved here. Further, the current revisions of the model code have reorganized, renumbered, and deleted the specific language respondent cites. *See* Model Business Corp. Act §§ 14.06, 14.07 (1991).

5. Other methods of dissolution do not provide for reinstatement after dissolution, but only provide a means for terminating the dissolution process before the dissolution proceedings are completed. *See* Minn.Stat. §§ 302A.723, subd. 2 (shareholders retain right to revoke dissolution proceedings; "corporate existence continues to the extent necessary to wind up the affairs of the corporation until the dissolution proceedings are revoked or articles of dissolution are filed with the secretary of state"); 302A.731 (procedures for revocation of dissolution proceedings); 302A.761 (discontinuance of dissolution proceedings by court). Further, other corporate dissolution provisions in the Act clearly declare when corporate dissolution becomes effective, whereas

ture amended section 302A.821 to add a provision for retroactive reinstatement of corporations that had been administratively dissolved by the Secretary of State after September 1, 1991. Minn.Stat. § 302A.821, subd. 6; 1992 Minn.Laws ch. 477, § 2 (providing for retroactive effective date). This provision is applicable here because the Secretary of State dissolved Favorite Construction on October 16, 1991. Significantly, retroactive reinstatement of a corporation "returns the corporation to *active status* as of the date of the statutory dissolution." Minn. Stat. § 302A.821, subd. 6(1) (emphasis added). The term "active status" implies that the corporation had some status, an "inactive status," during the period of administrative dissolution.

Courts in other states have held that the effect of a reinstatement statute is to make the dissolution of a corporation a suspension of corporate privileges rather than a termination of the corporate existence. *See e.g., United States v. Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d 726, 746–47 (8th Cir.1986) (allowed suit against Delaware corporation eight years after it ceased to do business, six years after it liquidated its assets and four years after the Delaware Secretary of State forfeited its charter), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1986); *Wax v. Riverview Cemetery Co.,* 24 A.2d 431, 436 (Del.Super.Ct.1942) (corporation terminated for nonpayment of taxes "is in a state of coma from which it can be easily resuscitated * * * [and it] still can serve as repository of title and as obligor of a debt"); *Globe Constr. Co. v. Yost,* 173 Wash. 522, 23 P.2d 892, 894 (1933) (holding that so long as corporation is eligible for reinstatement, it is not dead and is subject to process and suit).

Respondents argue that these and other foreign cases cited by Lyman Lumber are distinguishable because provisions and language in the foreign statutes are different

than Minnesota laws. For example, respondents note that various states refer to "forfeiture of charter" rather than using the term "dissolution," as Minnesota does in the administrative dissolution statute here. This distinction, however, has little significance. The term "dissolved", used in Minn.Stat. § 302A.821, subd. 5, and the term "forfeiture of charter" manifest the same intent: to terminate the corporate status. *See, e.g., City Communications, Inc. v. City of Detroit,* 888 F.2d 1081, 1085 (6th Cir.1989) (Michigan corporation "dissolved" for failure to file annual reports); *Globe Constr. Co.,* 23 P.2d at 894 ("corporation was stricken from the records of the secretary of state").

The Eighth Circuit Court of Appeals addressed circumstances similar to this case in *Northeastern Pharmaceutical & Chem. Co.,* 810 F.2d at 746. There, a Delaware corporation had not filed a certificate (articles) of voluntary dissolution with the Secretary of State, nor had the corporation been dissolved by court action. *Id.* The court held that because Delaware law provided that the corporation's charter could be "revived," it thus had the capacity to be sued. *Id.* at 747.

Respondents argue that cases applying Delaware law, such as *Northeastern Pharmaceutical & Chem. Co.,* are inapposite to the circumstances here because, unlike Minnesota corporations chartered under chapter 302A, Delaware law provides that a corporation is subject to suit for three years after its dissolution. The eighth circuit did not apply that law in *Northeastern Pharmaceutical & Chem. Co.,* however, because it allowed the corporation to be sued more than three years after the Delaware Secretary of State revoked the corporate charter. *Id.,* 810 F.2d at 746–47. In concluding that corporation had the capacity to be sued six years after revocation of its charter, the court distinguished the provision that extended corporate existence for three years. *Id.*

Minn.Stat. § 302A.821 does not. *Cf.* Minn.Stat. §§ 302A.711 (dissolution by incorporators; effective upon filing of articles of dissolution with Secretary of State); 302A.734 (voluntary dissolution; effective when its articles of dissolution filed with the Secretary of State); 302A.763, subd. 2 (involuntary or supervised voluntary dissolution; effective when court enters decree dis-

solving corporation). Significantly, Minn.Stat. § 302A.821, subd. 5(b) originally provided that the Secretary of State send a "notice explaining that the corporation has been dissolved" to the administratively-dissolved corporation, but the legislature amended the statute in 1991 to delete this requirement. 1991 Minn.Laws, ch. 205, sec. 7.

Thus, the circumstances and legal analysis in *Northeastern Pharmaceutical & Chem. Co.* appropriately supports our decision in this case.

Finally, we look at the 1993 amendments regarding dissolved corporations. The legislature amended Minn.Stat. § 302A.821, subd. 6, to allow an administratively-dissolved corporation only one year to seek reinstatement. 1993 Minn.Laws ch. 48, § 1. At the same time, the legislature amended Minn.Stat. § 302A.901 to provide for service on a dissolved corporation through the Secretary of State:

> (a) If a corporation has voluntarily dissolved or a court has entered a decree of dissolution, service may be made according to subdivision 1 so long as claims are not finally barred under section 302A.781.
>
> (b) If a corporation has been involuntarily dissolved pursuant to section 302A.821, service may be made according to subdivision 1.

*Id.*, subd. 2a(a), (b) (Supp.1993); 1993 Minn. Laws ch. 17, § 57.

■ We disagree with respondent's argument that these amendments created rights or causes of action that did not exist before against administratively-dissolved corporations. In disagreeing, we are mindful of the presumption that an amendment to a statute makes some change in the law. *Honeymead Prods. Co. v. Aetna Casualty & Sur. Co.*, 270 Minn. 147, 150, 132 N.W.2d 741, 743 (1965). The amendment regarding service upon the Secretary of State did not create the creditor action against a corporation, however, it merely detailed an alternate means of service. The amendment to section 302A.901 appears to codify the existing policy of the Secretary of State to accept service, as it did here on two separate occasions, on an administratively-dissolved corporation. Such a procedure was appropriate in 1992, even though the statute did not explicitly provide so. *See Kopio's, Inc. v. Bridgeman Creameries*, 248 Minn. 348, 354, 79 N.W.2d 921, 926 (1956) (citing 16 Fletcher *Cyclopedia Corporations* (perm. ed.) section 8146, for the rule, "[w]here a corporation may be sued after its dissolution, process may ordinarily be served upon the same persons or officers who could

have been properly served if the corporation had not been dissolved"). Service upon the Secretary of State is valid where a dissolved corporation is still subject to suit. *Id.* 248 Minn. at 356, 79 N.W.2d at 927. Thus, service of Favorite Construction upon the Secretary of State was proper here.

## II.

Universal Title filed a notice of review, contending that the district court abused its discretion when it failed to sanction Lyman Lumber and award attorney fees under Minn.R.Civ.P. 11 and Minn.Stat. § 549.21 (1992). Our review of the record shows that Universal Title did not include a rule 11 motion in any of its pleadings. *See Uselman v. Uselman*, 464 N.W.2d 130, 143 (Minn.1990) (party must have "fair notice" of the possibility of sanctions under rule 11). In addition, our holding today, that Lyman Lumber is entitled to bring suit against Favorite Construction, disposes of any claim that Lyman Lumber acted in bad faith in asserting its claims.

## DECISION

■ The trial court erred in determining that Favorite Construction could not be effectively served process through the Secretary of State after the Secretary of State had administratively dissolved the corporation. While administrative dissolution by the Secretary of State strips the corporation of its rights and privileges under the Minnesota Business Corporations Act, the Act leaves such corporations indefinitely open to suit by a creditor, unlike the other sections of the Act which provide for the barring of claims after certain required procedures and/or proceedings are completed.

**Reversed and remanded.**