**In re Dennis BROSE, Debtor.**

**Nauni J. Manty, Trustee, Plaintiff,**

**v.**

**D56, Inc., Department 56 Minnesota, LLC, Department 56 Retail, Inc., Department 56 Sales, Inc., Department 56, Department 56 Trading Co., Ltd., and Department 56, Inc., Defendants.**

**Bankruptcy No. 04–34757.**
**Adversary No. 05–3118.**

United States Bankruptcy Court,
D. Minnesota.

March 28, 2006.

Michael J. Iannacone, Ake Elmo, MN, for Debtor.

## ORDER RE: DEFENDANTS' MOTION FOR DISMISSAL

GREGORY F. KISHEL, Chief Judge.

This adversary proceeding came on before the Court for hearing on the Defendants' motion for dismissal. The Defendants appeared by their attorney, James R. Mayer. The Plaintiff ("the Trustee") appeared by her attorney, Daniel J. McGarry. Upon the moving and responsive documents, the original and proposed amended complaints filed by the Trustee,

and the arguments of counsel, the following decision is memorialized.

## NATURE OF THIS LAWSUIT

Debtor Dennis Brose filed a voluntary petition under Chapter 7 on August 13, 2004. The plaintiff in this adversary proceeding is the Trustee of the Debtor's bankruptcy estate.

In that capacity, the Trustee commenced this adversary proceeding against the named defendants. In her initial complaint, the Trustee made the following allegations of fact:

1. Before his bankruptcy filing, the Debtor was the president and sole shareholder of Period Design, Inc. ("Period Design"), a corporation.

2. At relevant times, "Department 56," defined in the complaint as the named defendants "collectively," was "engaged in the business of designing, manufacturing and selling" ceramic and porcelain figurines and other giftware.

3. On October 7, 1997, Period Design and "Department 56" entered an agreement under which Period Design, "as an independent contractor [was] to develop and design various product lines" of such goods. Period Design was also to work on the development of "accessories" to product lines that "Department 56" had designed and produced previously.

4. "Department 56" was to pay Period Design "royalty fees and development costs for products designed and developed pursuant to the agreement and marketed and sold by Department 56."

5. "Department 56" had failed to live up to its obligations under the agreement in several major ways. Royalty reports later issued under the agreement omitted products in lines that Period Design had developed. "Department 56" phased out production of products that Period Design had developed, at least under the names attached to them by Period Design; yet it "continues" to sell the same products ostensibly as part of its own product lines, having used "other artists" to further develop concepts initially created by Period Design. "Department 56" has misappropriated other concepts and designs developed by Period Design. And, "Department 56" has "failed to pay Period Design royalty payments as agreed," "for designs and marketing concepts that have generated and continue to generate millions of dollars in revenue for Department 56."

In the balance of her complaint, the Trustee identified the statutory basis of her suit as 11 U.S.C. § 542(b). She alleged that "Department 56" had breached its agreement with Period Design; that in consequence "Department 56 owes a debt that is property of the estate;" that "Department 56" has failed and refused to comply with her "demand for turnover of the Claim;" and that therefore she is entitled to judgment against "Department 56" "for royalty payments and other amounts due to the Debtor in an amount to be determined at trial."

## DISCUSSION

The Defendants made the motion at bar, in lieu of serving an answer to the Trustee's complaint as their immediate response.[1] They make four frontal attacks

1. In doing this, the Defendants were exercising an option given them by Fed.R.Civ.P.

on this lawsuit, in whole or in part. This discussion is organized by the theories underlying those attacks.

### 1. Identity of Proper Party/Parties–Defendant.

In the caption and text of her original complaint, the Trustee named seven different defendants. Six of them are tagged as artificial business entities. Six of them have very similar names, and the seventh (D56, Inc.) has a name evocative of those of the other six.

In the "Parties" section of her complaint, the Trustee identifies the defendants, "collectively," as having a single business address in Eden Prairie, Minnesota, and states that they are "collectively" engaged in the same business. Other than that, she makes no allegations as to their interrelatedness in fact or law. From there, the Trustee asserts her "claim" and right of monetary recovery against "Department 56," the tag she equates with all of the named defendants, "collectively."

As the Defendants point out, however, the agreement on which she is suing names only "D56, Inc." as the entity with which Period Design was contracting.[2] There is no reference in the agreement to any of the other named defendants. There is no statement in the complaint to the effect that any of them was liable under the agreement in its own individual capacity, to anyone. Nor is there any allegation that any of those other defendants are liable to the Debtor's bankruptcy estate or to Period Design, past or present, under any free-standing basis in contract or law. Finally, there is no pleading of facts to support an attribution of a contractual liability of D56, Inc. to any of the other named defendants, under such theories as alter ego, piercing of the corporate veil, successor liability, common enterprise, etc.

The named defendants other than D56, Inc. thus argue that the complaint on its face fails to state a claim against any of them, in their separate and individual capacities.

The Trustee's only response to this argument is an offer to voluntarily "dismiss the other Defendants," "[a]ssuming that the Defendant D56, Inc. is willing to stipulate that it is the proper party to this adversary proceeding ..." This bit of lawyerly equivocation does not face off with the merits of the Defendants' argument at all. Rather cheekily, it sidesteps the substantive issue by proffering a voluntary dismissal in exchange for a potentially-extendable concession from the one remaining defendant.

D56, Inc. did not take the hook, however, and there is no reason why it should have. Under the content of the Trustee's own pleading, none of the others have a place as named parties-defendant. If the Plaintiff could not plead an articulated basis in fact for attaching liability to any of them, even in summary fashion, the complaint simply does not state a claim against them.

Defendants D56, Inc., Department 56 Minnesota, LLC, Department 56 Retail, Inc., Department 56 Sales, Inc., Depart-

---

12(b), *as incorporated by* Fed. R. Bankr.P. 7012(b). That rule allows seven specific sorts of defenses to be made by motion, at the option of the party, as long as the motion is "made before pleading if a further pleading is permitted." As the basis on which they exercise their option, the Defendants appear to be relying on types "(1) lack of jurisdiction over the subject matter," and "(6) failure to state a claim upon which relief may be granted."

**2.** The full text of the agreement is attached to the complaint as Exhibit A and is incorporated by reference under the complaint's paragraph 16.

ment 56, Department 56 Trading Co., Ltd., and Department 56, Inc. therefore are entitled to have the Trustee's complaint dismissed as to them, on that simple a basis.

### 2. Identity of Proper Complainant Under Claim Pleaded.

The remaining defendant (hereafter "D56") then attacks the Plaintiff's "standing" to assert the claim for breach of contract that she has pleaded.[3] As D56 would have it, the Debtor, in his individual capacity, was not a party to or beneficiary of the contract; and as a result he did not have a right to sue on account of its breach, regardless of his status inrelation to Period Design, even as a sole shareholder. Thus, D56 argues, because the Debtor had no right of suit against D56 when he filed for bankruptcy, such a right could not pass into his bankruptcy estate, and the Trustee cannot sue D56 on account of a breach.[4]

As to that much, D56 has it right.

■■■ The start lies with the nature of what is now in the Debtor's bankruptcy estate. The filing of his petition under Chapter 7 "create[d] an estate," "comprised of ... all legal or equitable interests of the [D]ebtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1) (interior formatting omitted). Among the property rights that pass into a bankruptcy estate are causes of action and rights of recovery on legal claims, whether in suit or not. *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir.1987), *cert. denied,* 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987). *See also United States ex rel. Gebert v. Transport Admin. Servs.*, 260 F.3d 909, 913 (8th Cir.2001); *Whetzal v. Alderson*, 32 F.3d 1302, 1303 (8th Cir.1994); *Carlock v. Pillsbury Co.*, 719 F.Supp. 791, 856 n. 31 (D.Minn.1989); *In re Harrison*, 314 B.R. 751, 753 (8th Cir. BAP 2004); *In re Forbes*, 215 B.R. 183, 190 (8th Cir. BAP 1997). However, all interests in property that pass into a bankruptcy estate remain as defined and limited by nonbankruptcy law in the estate as they were before the filing. *In re Schauer*, 62 B.R. 526, 529–532 (Bankr.D.Minn.1986), *aff'd,* 835 F.2d 1222, 1224–1227 (8th Cir.1987). And, more

---

3. To settle an issue, now, if only for the sake of nomenclature, let it be said that this is indeed a claim for breach of contract. The Trustee cites 11 U.S.C. § 542(b) as the basis for her request for entry of a final judgment against D56 in this court. To justify that, she characterizes D56's liability under the agreement as a "debt that is property of the [bankruptcy] estate and that is matured, payable on demand, or payable on order" within the contemplation of that statute. It is very much in dispute as to whether D56's liability *to anyone* is matured and unequivocally due. But, as a threshold matter, it cannot be gainsaid that the underlying "debt," whether it exists and whatever its status as due, had its origin in a breach of contract. Under the facts as pleaded, an event of that legal character, and no other, is identifiable as the source of the debt, if any there is.

4. D56's counsel phrased his argument in terms of whether the Trustee "lacks stand-ing." However, it is better to avoid that terminology. Generally, in the federal forum the word "standing" is used in relation to whether a plaintiff has raised a "case or controversy" that the federal courts are empowered to hear and adjudicate under Article III of the United States Constitution. *See* discussion in *In re A.P.I., Inc.*, 331 B.R. 828, 857–859 (Bankr.D.Minn.2005). That is not really what D56 is talking about here. The question here is whether, positioned as she is in relation to the Debtor and the parties to the contract, the Trustee has a right of recovery against D56 under the state substantive law that governs the contract and the cluster of parties around the contract. These two legal issues are very different, however much they may have potential bases in overlapping facts. It is better to avoid the more "loaded" and evocative term that is so strongly linked to the constitutional question, because the parties have not styled their argument in light of it and it just is not necessary to get that far.

to the point here, "the existence of a bankruptcy cannot grant the trustee a cause of action against third parties which would have been unavailable to the debtor." *Stumpf v. Albracht*, 982 F.2d 275, 277 (8th Cir.1992).

The Debtor was not a party to the 1997 agreement on which the Trustee is suing. Period Design was. Under § 541(a), the Trustee succeeded to the Debtor's equity interest in Period Design. However, this only makes the estate the sole shareholder of Period Design; it does not mean that the estate then steps right into the position of Period Design itself, as to any of *Period Design's* assets. Period Design unquestionably could claim breach of contract to sue D56. But, "Minnesota has long adhered to the general principle that an individual shareholder may not directly assert a cause of action that belongs to the corporation." *Wessin v. Archives Corp.*, 592 N.W.2d 460, 464 (Minn. 1999). This is founded on the "basic tenet of American corporate law[,] ... that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003). More to the point of what the Trustee is attempting here, "a sole shareholder may not choose to ignore the corporate entity when it suits his convenience." *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d at 1225.

All of this was D56's initial theory to support this leg of its motion for dismissal, and all of it is legally sound. The Trustee's response was a motion for leave to amend her complaint. The proposed amendments would add the following fact allegations and statements of legal position to the Trustee's armament:[5]

6. Period Design was "statutorily dissolved in 2003 by the Minnesota Secretary of State for failing to file its annual renewal."

7. Because the Debtor's shareholding in Period Design is now in the bankruptcy estate, the Trustee "has the right, as the sole remaining shareholder of Period Design, to commence a derivative action on behalf of Period Design for the amounts owing from Defendants."

8. Because Period Design "has been statutorily dissolved," and the Debtor, "the only remaining officer, ... has filed for bankruptcy, and thus was not in a position to pursue this action on behalf of Period Design," any demand for the pursuit of this action that the Trustee could have made to Period Design "would have been futile."

9. This adversary proceeding is "not a collusive one to confer jurisdiction on this Court" and the Trustee, "being the sole remaining shareholder," "fairly and adequately represents the interests of all shareholders of Period Design."

As the Trustee's counsel acknowledges, these allegations are an effort to satisfy the form pleading requirements of Fed. R.Civ.P. 23.1, *as incorporated by* Fed. R. Bankr.P. 7023.1. However, the effort is unavailing. Period Design would still be the real party in interest in such a shareholder-derivative action. Minn.Stat. § 302A.783 (providing that, after dissolution of corporation, "any of its ... shareholders may assert ..., *in the name of the corporation,* any claim by ... the corpora-

---

5. For some reason, the Trustee's counsel did not append a copy of an integrated amended complaint to his client's motion. He did so after the hearing, at the direction of the court.

The numbering on the following paragraphs is sequential to that used for the summary of fact allegations in the original complaint, *infra* at pp. ——–——.

tion" (emphasis added)). As a result, the fruits of a successful outcome simply are not to be channeled directly into the bankruptcy estate, on account of its status as successor-shareholder.

*And that is just what the amended complaint still calls for, as a matter of structure and flow.* The Trustee still seeks judgment to be granted to her personally, as the administrator of the *Debtor's* bankruptcy estate. In that capacity, she would administer the proceeds of judgment enforcement and they would go to the *Debtor's* creditors. They would not go to the parties who would be entitled to receive them in a flow *through Period Design* as the real party in interest, on account of the distribution priorities of Minn.Stat. § 302A.753, Subd. 3 and 4, or otherwise.[6] Even under her new theory, the Trustee still does not acknowledge that the bankruptcy estate-as successor shareholder-and Period Design, as a moribund corporation-have separate legal personalities.

The fact that Period Design may have been subjected to "administrative dissolution"[7] for failure to comply with the formalities of annual reregistration does not change this. In the first place, administrative dissolution is in the nature of a penalty alone, for failure to follow through on a formality of reregistration; it is termed as such in the title of Minn.Stat. § 302A.821, Subd. 4, "**Penalty; reinstatement.**" And, the imposition of that penalty does not mean that "the corporation has ... completely ceased to exist." *Lyman Lumber Co. v. Favorite Constr. Co.*, 524 N.W.2d 484, 488 (Minn.Ct.App.1994). The statute itself provides a simple expedient for reinstatement, which:

(c) After administrative dissolution, filing a registration and the $25 fee with the secretary of state:

(1) returns the corporation to good standing as of the date of the dissolution;

(2) validates contracts or other acts within the authority of the articles, and the corporation is liable for those contracts or acts; and

(3) restores to the corporation all assets and rights of the corporation to the extent they were held by the corporation before the dissolution occurred, except to the extent that assets or rights were affected by acts occurring after the dissolution or sold or otherwise distributed after that time.

Minn.Stat. § 302A.821, Subd. 4(c).

"[T]he effect of [such] a reinstatement statute is to make the dissolution of a corporation a *suspension* of corporate privileges *rather than a termination* of the corporate existence." *Lyman Lumber Co. v. Favorite Constr. Co.*, 524 N.W.2d at 489 (emphasis added).

The provisions for "administrative dissolution" and reinstatement are in a part of Minnesota's Business Corporation Act that is titled and located differently from those governing *voluntary* dissolution by incorporators, shareholders, or court proceeding. In isolation at least, this structure suggests that Minn.Stat. § 302A.783, governing the right to sue or defend after

---

6. Under these statutes, the assets of a corporation or its proceeds are to be applied, in order of priority, to the costs and expenses of the liquidation; the corporation's tax liabilities; the corporation's liabilities under the workers' compensation laws if it was self-insured; employees' claims for compensation;

"[o]ther claims duly proved and allowed"; and only then, to shareholders.

7. This is the terminology used in Minn.Stat. § 302A.821, Subd. 4(b). The phrase "statutorily dissolved," which the Trustee's counsel uses, appears to be attorney jargon.

dissolution, is not even applicable to an administratively-dissolved corporation. But even if it is—and there are arguments for that as well as more against it[8]—this section still does not give the Trustee the edge she seeks. It provides that,

> After a corporation has been dissolved, any of its former officers, directors, or shareholders may assert or defend, in the name of the corporation, any claim by or against the corporation.

Minn.Stat. § 302A.783.

And by this text again, it comes back to the fact that the Trustee here would have to "assert, ... in the name of the corporation," the claim for breach of contract against D56. Even in her proposed amendment, she has not done so, in so many words or via a structure of legal theory that recognizes the implications of such a status. But, if she were to do so, she would really no longer be acting in the capacity of a fiduciary directly chargeable to the *Debtor's* creditors in asserting the claim.

So, D56 is correct in the last instance: in her own capacity, the Trustee does not have a cause of action for breach of contract to sue out against it. As to D56, then, the Trustee's original complaint does not state a claim upon which relief may be granted against D56. And, because the proposed amendments do not plead up any more viable cause of action against D56, the Trustee's motion for leave to amend must be denied. *In re Quality Pontiac Buick GMC Truck, Inc.*, 222 B.R. 865, 869–870 (Bankr.D.Minn.1998), and Eighth Circuit decisions cited therein.

As a result, this lawsuit must be dismissed, as against the one remaining Defendant.

### 3. Remaining Theories of Motion for Dismissal.

The other two theories of the Defendants' motion were argued in the alternative, on the possibility that the Trustee "had standing" or was the proper holder of a cause of action against the Defendants.[9]

---

**8.** The preamble to the Minnesota Business Corporation Act's titled part that governs "Dissolution," Minn.Stat. § 302A.701, provides that a corporation may be dissolved by four separate procedures, each identified by certain enumerated sections of the Business Corporation Act. Three of these procedures are linked to specific initiators, all of whom are private parties; the fourth is identified to the Secretary of State, and contemplates the procedure of administrative dissolution alone. After the last of the provisions governing the remedy of court proceeding, the "dissolution" part has three sections—Minn. Stat. §§ 302A.781, .783, and .791—that govern the disposition of claims against a dissolved corporation and its assets. Very arguably, these are generally-applicable to *all* corporations dissolved under any of the four procedures. On the other hand, even though Minn.Stat. § 302A.783 purports to vest rights of suit in the individual principals of a dissolved corporation, Minn.Stat. § 302A.821, Subd. 4(c)(3), revests such "assets and rights" in a corporation that is reinstated after administrative dissolution. This, of course, means that the di-

vestment upon an administrative dissolution is readily reversible, via mere operation of law consequent to the simple expedient of reregistration. This is fundamentally different from the final winding-down and settlement of all corporate affairs that in turn is contemplated by Minn.Stat. §§ 302A.727 and 302A.7291. So, the statutory text gives no authoritative answer. Unfortunately the *Lyman Lumber Co.* court—which dealt only with a corporation's liabilities rather than its assets—was not required to reach this issue. But that court's characterization of administrative dissolution as a suspension of corporate privileges rather than a permanent surrendering of them has its clear implications for the permanency of vesting of rights over corporate assets.

**9.** The third theory was that the Trustee inappropriately styled this matter under 11 U.S.C. § 542(b), inasmuch as it would be a full-blown suit for breach of contract, with liability and damages all contested, rather than the simple sort of collection-upon-account-stated

The ruling on the first two theories moots these others.

### ORDER

On the decision just memorialized,

IT IS HEREBY ORDERED:

1. The Plaintiff's motion for leave to amend her complaint is denied.

2. This adversary proceeding is dismissed.

contemplated for relief via turnover. Via the fourth theory, the Defendants ask this court to exercise its discretion under 28 U.S.C. § 1334(c)(1), to abstain from hearing and determining this matter.